Railroad v. Martin.

LOUISVILLE & NASHVILLE RAILROAD COMPANY *et al. v.*
JENNIE MARTIN, Administratrix.

*(Jackson.    April Term, 1904.)*

1.  **CONTRIBUTORY NEGLIGENCE.**    Mitigates damages as a
matter of law, and not merely in discretion of jury.

Contributory negligence as a matter of law must go in mitiga-
tion of damages, and the jury is not to be left to the exercise
of any discretion in determining whether it may or may not
be so considered, and the charge of the court that "the neg-
ligence of the deceased may be considered by the jury in miti-
gation of damages" contains affirmative and prejudicial error.
(*Post, pp.* 275-279.)

Cases cited and approved:  Railroad v. Nowlin, 1 Lea, 523; Pat-
ton v. Railroad, 89 Tenn., 370; Postal Telegraph-Cable Co. v.
Zopfi, 93 Tenn., 373; Railroad v. Satterwhite, 4 Cates, 185;
Byrne v. Railroad, 9 C. C. A., 679.

Cases cited, distinguished and disapproved:  Railroad v. Burke,
6 Cold., 52; Railroad v. Smith, 6 Heis., 178, 179; Railroad v.
Robertson, 9 Heis., 282; Hill v. Railroad, 9 Heis., 826; Railroad
v. Walker, 11 Heis., 386; Railroad v. Connor, 2 Bax., 388; Rail-
road v. Fain, 12 Lea, 38; Dush v. Fitzhugh, 2 Lea, 308, 309;
Railroad v. Humphreys, 12 Lea, 208; Railroad v. Flemming, 14
Lea, 126; Railroad v. Foster, 88 Tenn., 678; Railroad v. Wal-
lace, 90 Tenn., 62; Turnpike v. Yates, 108 Tenn., 437.

2.  **SAME.**  Same.  Extenuated by circumstances; erroneous
charge becomes harmless by remittitur.

Contributory negligence is extenuated in a large degree where a
railroad flagman in the discharge of his duties walks on the
railroad track where it is safest and customary to walk, the
other places being more dangerous and inaccessible; and the
court's failure to charge correctly on the duty of the jury to

Railroad v. Martin.

mitigate the damages on account of the contributory negligence of the deceased is not reversible error, where the defendant receives the full benefit of such correct charge by a remittitur entered upon the verdict. (*Post, pp.* 273, 274, 279, 280.)

See headnote 8.

3. **CITY ORDINANCES.** Violation is negligence per se giving right of action for injuries received as a proximate cause.

- The violation of a city ordinance prohibiting a greater rate of speed than six miles an hour for steam railroad engines and cars within the city limits is negligence *per se*, and if it be the proximate cause of an action or injury, it gives a right of action for the injuries. (*Post, pp.* 272, 280-282.)

Case cited, distinguished, and approved: Queen v. Coal Co., 95 Tenn., 458.

4. **SAME.** Same. Railroad flagman at crossing is entitled to benefit of ordinance limiting speed of engines and cars.

A railroad flagman stationed at a crossing in obedience to a city ordinance, charged with the duty of observing the approach of trains and in the performance of duties for the benefit of the general public is entitled to the benefit of a city ordinance forbidding the operation of railroad engines and cars within the corporate limits at a speed exceeding six miles an hour. (*Post, pp.* 280-282.)

Case cited and approved: Williford v. Memphis Street Railway Co., MS.

5. **FELLOW SERVANTS.** Privity of contract with principal is necessary to make fellow servant doctrine applicable.

A flagman employed by a railroad where it and two other roads cross the same street, whose duty under instructions from his employer was to flag for the other two railroads in pursuance of an agreement between such employer and the other roads, which agreement was unknown to the flagman, is not a servant of the other two railroads, and the fellow servant doctrine is not applicable as to such roads for want of privity of contract. (*Post, pp.* 282-285.)

Railroad v. Martin.

Cases cited and approved: Zeigler, v. Railroad, 52 Conn., ——;
Railroad v. Hardy, 34 Atl., 987; Railroad v. Ferch, 44 S. W.,
317; Swanson v. Railroad, 3 Exchequer Dic., 341.

6. **SAME.** Railroad flagman at crossing is not fellow servant of
crew on a passing train.

A railroad flagman employed and stationed at a crossing to warn
the public of approaching trains is not a fellow servant of the
crew on a passing train, for the reason that he is in a different
department of the railroad service. (*Post, pp.* 285, 286.)

7. **RAILROADS.** Liability is absolute, where statutory precau-
tions are applicable and are not complied with.

A railroad's liability for killing a person upon its track by a
backing engine and tender not engaged in switching within its
yards is absolute. The statutory precautions apply in such a
case and the manner of running the engine and tender pre-
cludes the possibility of observance, but does not excuse it.
(*Post, pp.* 286-287.)

Cases cited and approved: Railroad v. Wilson, 90 Tenn., 271;
Railroad v. Dies, 98 Tenn., 655.

Case cited, distinguished, and approved: Clarkson Case, 28 Eng.
& Am. Railroad Cases, 457.

8. **CHARGE OF COURT.** Erroneous, if not prejudicial, is not
reversible error.

Court's failure to charge the statutory precautions where they
are applicable is error, but not reversible error where not pre-
judicial to the appellant. (*Post, p.* 287.)

See headnote 2.

FROM SHELBY.

Appeal from the Circuit Court of Shelby County.—
J. P. YOUNG, Judge.

JOHN P. HOUSTON and THOMAS B. TURLEY, for Railroad.

J. B. & C. W. HEISKELL, and T. F. KELLEY, for Martin.

---

MR. JUSTICE MCALISTER delivered the opinion of the Court.

Jennie Martin, as administratrix of Thomas Gillooley, deceased, recovered a verdict and judgment against the Louisville & Nashville Railroad Company for the sum of ten thousand dollars ($10,000) as damages for the negligent killing of her intestate. Pending the motion by the company for a new trial, the court suggested a remittitur of three thousand dollars ($3,000), which was accepted by the plaintiff and a judgment was thereupon entered in her favor for seven thousand dollars ($7,000).

The company appealed and has assigned errors.

Plaintiff's intestate, Thomas Gillooley, was a flagman at the crossing of Dean avenue and Broadway in the city of Memphis and has been engaged in that occupation for about fifteen years. He also flagged at Poston avenue on the south side of Broadway, eighty-three feet east of where Dean avenue enters Broadway.

Broadway is practically monopolized by the railroad companies in the construction of their tracks. There is no roadway for vehicles passing longitudinally on Broadway. The tracks of the different railroads ex-

tend its entire length and are about twelve feet from cen
ter to center. The Frisco system has two tracks; the
Southern two; the N., C. & St. L. and the L. & N. jointly
have one track, and the Union Railway has two.

It appears from the record that on the evening of
Nov. 24, 1902, the mangled body of Thomas Gillooley
was found a few feet east of Dean avenue, on the track
of the N., C. & St.. L., Railway, which track was also
used by the engine and trains of the L. & N. R. R. Co.
The L. & N. R. R. Co. receives freight from certain rail-
road companies in South Memphis by way of Broadway
and also delivers freight to various industries along
Broadway and other points. For this purpose the com-
pany has switching crews, whose duties are to handle
this freight and to switch cars at the North Memphis
station when not engaged in South Memphis work. The
deceased was killed by an engine drawing eight or nine
box cars which had been collected along Broadway and
were being carried to some of the switching points of the
company. The engine at the time was moving back-
ward, that is to say, the tender on the engine was in
front as it moved eastward drawing the box cars.

It is claimed by plaintiff below that it was not a
switch engine, nor engaged in switching, but was a reg-
ular road engine, engaged in transferring cars from de-
fendant's road south to its north and intermediate sta-
tions. It was backing on the N., C. &-St. L. main track
at the rate of from ten to thirty miles an hour, as the
speed was variously estimated by witnesses for plaintiff.

Railroad v. Martin.

There was also evidence adduced by the plaintiff tending to show that the bell was not rung, nor was there a lookout or headlight on the train. It is conceded on behalf of the defendant company that there was no one on the tender, then in front, on the lookout ahead.

Gillooley, it appears, was employed as a flagman by the several railroads in obedience to the requirements of a municipal ordinance. He was employed by the Frisco system and was a flagman at Dean avenue and Broadway when the L. & N. began to operate its trains on Broadway. The record discloses that the flagmen were paid by the Frisco system and the other companies prorated the salaries. The Frisco System paid two-fifths; the Southern two-fifths; and the N. C. & St. L. one-fifth of said salaries, which amounts were regulated by the number of tracks each company had on Broadway. The L. & N. Railroad Co. paid its *pro rata* share of Gillooley's salary to the N., C. & St. L. Railway. But, notwithstanding this traffic arrangement between the several railroads, the fact is established that Gillooley was employed by the Frisco System and that he received his orders from that system, which alone controlled and directed his actions. He was on the pay-roll of the Frisco Sytem, and his salary was paid to him direct by that system; according to the testimony the other railroads had no power to discharge or direct him in his movements. It is true the deceased flagged for the N., C. & St. L. Railroad, the L. & N. Railway and the Southern Railway as well as for the Frisco System, but he was di-

rected to do so by the Frisco System. It appears that, under an agreement between the superintendents of the different companies operating trains on Broadway, it was stipulated that the Frisco System should employ the flagmen needed by the different companies and Gillooley was employed under this agreement.

Plaintiff's evidence tends to show that Gillooley was killed about 5:30 o'clock in the afternoon. It was getting dark and drizzling rain. According to the testimony, Gillooley had walked east on the N., C. & St. L. track (also occupied by the L. & N. Railroad) and was killed on that track while flagging, or just after he had flagged to warn persons at Poston avenue of an approaching Southern train. There was also evidence tending to show that deceased tried to get off the track when he saw the train approaching him from the rear, but it was in such close proximity to him that he had no chance to escape. It appears there was some water between that track and the parallel track just south of it and there is some evidence that deceased hesitated to leave the track on account of being compelled to get in the water. An ordinance of the city adduced in evidence forbids the running of engines and trains within the corporate limits of the city at a rate of speed exceeding six miles an hour. It is established by the evidence that the accident did not happen within the yard limits of the L. & N. R. R. The place of the accident was twelve miles from the company's north station and about three-fourths of a mile from its south sta-

tion. As shown, these stations are about thirteen miles apart and in order to pass from one to the other, the defendant company uses part of the main track of the N. & C. Railway. As already stated, at the time of the accident, this train was delivering cars and freight to the industries along Broadway from the north to the south station. There is evidence tending to show that no other train passed over Broadway at the point where the accident occurred between the hours of five and six p. m. on Nov. 24, 1902, excepting this Louisville and Nashville No. 340 train. As stated before, evidence was adduced on behalf of the plaintiff tending to show that no bell was rung or whistle blown. Witnesses testify that, if there was any light at all on the tender of the moving train, it was only a dim light from a lantern. The evidence also shows that the duties of the deceased were to admonish people on Dean and Poston avenues of the approach of trains, but not to stop the trains, since that was the duty of the switchman. The evidence also shows that Gillooley was a careful, sober man and attentive to his duties. It is stated that during his service of fourteen years as flagman, he had not lost exceeding ten days. It is insisted that it was not negligence for deceased to walk on the N., C. & St. L. track in going from Dean to Poston avenue for the purpose of flagging, but that it was really the safest place he could have walked. The evidence shows there was a sharp declivity on the north side of this track and south of it

was a depression that held water and there are also many other parallel tracks. There is also evidence to show that the N., C. & St. L. track was the usual place where people walked and where deceased had been accustomed to walk in the performance of his duties. It appears there was no sidewalk or walkway north of the N., C. & St. L. track. The first of the two southern tracks lies next to the N. & C. track, and between those two tracks, from Dean to Poston avenues, the ground is lower than the tracks, causing a depression in which water accumulates to the depth of four inches.

The contentions of fact made on behalf of the plaintiff in the court below are thus summarized by learned counsel, viz:

(1) That at the time of the accident the defendant company was not engaged in switching operations within the limits of its yard, but was running a road engine outside of its yard within the corporate limits of the city of Memphis at a rate of speed exceeding six miles an hour, which was in violation of the prohibition of the city ordinance.

(2) That it was running this train backwards in a populous part of the city and had thus disabled itself from complying with the requirements of the State law requiring it to have the engineer, fireman or some other person upon the locomotive always upon the lookout ahead.

(3) The alarm whistle was not sounded, the brakes put down and every means employed to stop the train

and prevent the accident, although deceased was on the track ahead of the engine and his perilous position was imminent.

(4)   It is further insisted, independent of the requirements of the statute, these duties were all enjoined upon the defendant company at common law and it is liable for a breach of such duties, whether they be called statutory or common law.

(5)   That at the time of the accident deceased occupied no contractual relations with defendant company as its servant and hence there was no assumption on the part of Gillooley of the danger and risks incident to the operation of its engines and trains by defendant company.

It is obvious from this statement of the case that there is ample evidence to support the verdict of the jury upon one or more theories of defendant's liability. Moreover, it appears there is no assignment of error on behalf of the defendant company that there is no evidence to support the verdict and judgment of the court below.

The first assignment of error is based upon the charge of the court in stating to the jury that, "The negligence of the deceased *may* be considered by the jury in mitigation of damages."

The objection to the charge is that contributory negligence as a matter of law must go in mitigation of damages and the jury is not left to the exercise of any dis-

cretion in saying whether it may or may not be so considered.

It is therefore insisted the charge of the court on this subject contains affirmative error, which was prejudicial to the rights of defendant below.

In reply to this assignment of error counsel for defendant in error insists that the rule on this subject has not been uniform and invariable as will be seen from the decisions of this court, but that the terms, *may* and *must*, in dealing with the subject of contributory negligence in mitigation of damages, have been used indifferently. In support of this contention counsel cite authorities in which the following phrases are used:

"Might be looked to" (*N. & C. R. R. Co.* v. *Smith*, 6 Heisk., 178-9; *L. & N. R. R. Co.* v. *Robertson*, 9 Heisk., 282); "Proper to be considered" (*Railroad* v. *Fain*, 12 Lea, 38); "Should be considered" (*Dush* v. *Fitzhugh*, 2 Lea, 308-9; *Railroad* v. *Humphreys*, 12 Lea, 208; *Railroad* v. *Flemming*, 14 Lea, 128); "May and should mitigate" (*Railroad* v. *Walker*, 11 Heisk., 386); "May be considered" (*L. & N. R. R.* v. *Conner*, 2 Bax., 388; *L. & N. R. R.* v. *Burke*, 6 Cold., 52; *Turnpike* v. *Yates*, 108 Tenn., 437; *Railroad* v. *Wallace*, 90 Tenn., 62; *Hill* v. *L. & N. R. R.*, 9 Heisk., 826); "Only mitigate damages" (*Railway Companies* v. *Foster*, 88 Tenn., 678).

An examination of the cases in which these expressions are used will show that the court's attention was not challenged to their accuracy. Such inaccurate expressions frequently occur and pass unnoticed in in-

structions to juries and in the opinions of this court. They are not, however, to be exalted to the standard of judicial precedents when it is very clear that no determination of the subject was intended. It is to be observed, however, that our decisions show that wherever the question has been raised it has been uniformly adjudged by this court that a charge leaving this question to the discretion of the jury is erroneous. The question first arose in *N. & C. R. R. Co.* v. *Nowlin,* 1 Lea, 523. The charge of the trial judge in that case, which was the subject of review, was substantially the same as the charge given in the present case. In that case the trial judge had instructed the jury as follows:

"The negligence of the person, in all cases, can be looked to in mitigation of the damages or the amount of recovery."

This court said in respect of that charge as follows:

"Although the railroad may be and is liable, because of a failure to comply with the statutes, yet the contributory negligence of the party suing will go in reduction of damages. And this we hold to be a fixed rule of law, one of substantial right, and which the railroad has the right to have applied, if the jury should find contributory negligence upon the part of the party suing."

This court further said that, "If the jury found that the plaintiff was guilty of contributory negligence at the time of the accident, then it was their duty to look to it in assessing his damages, and augment or diminish

the same according as they found his negligence to be slight or gross."

For error in the charge of the trial judge the judgment in that case was reversed and the cause remanded. *Postal Telegraph-Cable Co. v. Zopfi,* 93 Tenn., 373.

In *Patton, Admr.,* v. *Railway Co.,* 89 Tenn., 370, this court said as follows: "The fact that deceased went on the track without looking or listening and that he continued upon it unconscious of danger until overtaken and run down is negligence that cannot be overlooked, and for this negligence he can not be entirely exonerated and this *must* be allowed in mitigation of damages, even if the jury shall think that his negligence under the peculiar facts of this case, was not the more immediate cause of the accident."

In *Byrne* v. *K. C., F. S. & G. R. R.,* 9 C. C. A, 679, a case which arose in Tennessee, Judge Lurton in commenting on this subject said as follows: "The supreme court of Tennessee has been very stringent in requiring that trial judges should instruct juries in cases under this statute that they must reduce damages for contributory negligence . . .

"The court should also say to the jury that they *must,* if they find that the bell was not ringing, reduce the damages to be awarded to the plaintiff by reason of the intestate's gross negligence," etc.

The wisdom and soundness of this rule must be apparent on a moment's reflection, for, if as a matter of law, it is not the duty of the jury in the assessment of

Railroad v. Martin.

damages to mitigate the recovery in proportion to the contribution of the plaintiff to the injuries, cases would occur where gross injustice would be inflicted upon defendants in the exercise of the jury's discretion in ignoring altogether the contributory negligence of the plaintiff.

But, as we have seen in *L. & N. R. R.* v. *Satterwhite, Admr.,* 4 Cates, 185, this court held erroneous a charge of the trial judge on the subject of exemplary damages which used the word *should* instead of *may.*

We are, therefore, of opinion that the charge of the trial judge in the present case on the subject of contributory negligence is affirmatively erroneous.

The contributory negligence of the deceased relied on by the company consisted in the proof that he was walking at the time of the accident on the track of the L. & N. R. R. Co. without looking or listening or exercising proper care for his own protection. In reply to this position counsel for defendant in error say that Gillooley walked on the L. & N. track, where others walked and where it was safest to walk and where he had walked for fourteen years past. It is insisted that under the proof Gillooley could not, with safety, on that dark night, have gone on the north side of the N. C. & St. L. track, for there was a precipitous descent from the track to the depth of four feet. It is said further that the proof shows that Gillooley could not have walked on the south side of that track, because the ground between it and the Southern track was de-

pressed and there was an accumulation of water there to the depth of four inches.

These considerations extenuate in a large degree the facts and circumstances relied on by the company to show contributory negligence on the part of deceased and in view of the remittitur of $3,000 entered upon the verdict at the suggestion of the court, we think the company has received the full benefit of a correct charge on the duty of the jury to mitigate the damages on account of the contributory negligence of deceased.

The third assignment of error is as follows:

"The court erred in charging that the city ordinance as to speed was applicable to this case and also in the manner in which it was given to the jury and in not properly qualifying and correcting it. The court said, 'The court therefore instructs you that there is an ordinance prohibiting under a penalty any railroad company or person to run any engine or train of cars on any railroad running into the city, on which cars are propelled by steam at a greater rate of speed than six miles an hour within the limits of the city. A violation of this ordinance is negligence *per se* if it be the proximate cause of an accident.' "

It is insisted it was error to give the ordinance in charge to the jury (1) because Gillooley was an employee and the ordinance was intended for the general public and not an employee, and especially was it not intended for an employee whose duty it was to watch for the very train which it was claimed killed him.

Railroad v. Martin.

It is conceded in the argument that when a statute of a State or an ordinance of a municipality is passed for the benefit of a person or class of persons that a violation of such statute or ordinance which results in an injury to any of such persons will give a right of action to recover for his injuries, but the contention is that this ordinance was passed for the benefit of the general public and that deceased, who was employed for the purpose of observing the approach of trains and admonishing the public thereof, was not comprehended within the scope of this statute. It is said that if this ordinance was made to protect a flagman at a crossing, it also protects one put to attend to gates at a crossing; also engine men, firemen, switchmen, conductors and track men operating trains within the city limits or keeping the track in order. The argument is that no law or ordinance gives a right of action except to such persons as are comprehended within its object. *Queen* v. *Coal Co.*, 95 Tenn., 458.

In that case it appeared there was a State statute which makes it a misdemeanor to employ a minor under the age of twelve years in any factory. But a minor under twelve years of age had been employed in violation of the terms of the statute and had sutained serious personal injuries during such employment. The court held that the statute imposed a duty on the coal company not to employ such a person and that a violation of the statute gave a right of action to any minor who had been injured as a proximate consequence of

such employment.    It is insisted that minors, being a class of persons for whose benefit the statute was passed, were entitled to a right of action.

While this is true, we are unable to perceive why the deceased was not entitled to the protection of the municipal ordinance in question forbidding the operation of engines within the corporate limits at a speed exceeding six miles an hour.   He did not occupy toward the defendant the relation of a servant, but was stationed at the crossing in obedience to a city ordinance, charged with the duty of observing the approach of trains and in the performance of duties for the benefit of the general public.   His duties cannot be assimilated to those of an engineer, fireman or other train man.

Moreover, this court held in the case of *Williford* v. *Memphis Street Railway Co.,* decided at the April term, 1903, MS. opinion, that the violation of this ordinance regulating the rate of speed within the corporate limits of the city of Memphis, afforded a right of action to any one injured in consequence thereof, provided such excessive rate of speed was the proximate cause of the accident.

The fourth assignment of error is based upon the charge of the circuit judge on the doctrine of fellow-servants.   The charge objected to is as follows:

"But as a determination by you of the issue of the fellow servant in favor of one of the parties to this suit would obviate the necessity of applying the foregoing

rules in the consideration of this case, that issue will
be taken up first.

"In this connection the court instructs you, gentle-
men, that a fellow servant in a railroad service may be
defined as one who with the plaintiff or a plaintiff's de-
cedent is or was engaged in a common employment,
under a common master, in the same branch or depart-
ment in the railroad service.

"The court likewise instructs you that if you find
from a preponderance of the evidence that Thomas
Gillooley was employed by the St. Louis & San Fran-
cisco Railroad Company, commonly called the Frisco,
as a flagman at the intersection of Dean avenue and
Broadway, and was intructed by his employer to flag
trains of the several railroads passing there, including
the defendant, the Louisville & Nashville Railroad
Company, and if you further find from the evidence
that an agreement existed between the Frisco and the
Nashville, Chattanooga & St. Louis Railway to prorate
the pay and accept the services of this and other flag-
men on the line, and likewise an agreement between
the Louisville & Nashville Railroad Company and the
Nashville, Chattanooga & St. Louis Railway, to also
prorate the pay and accept the services of such flagmen
as were thus employed by the latter under the above
agreement.

"And if you further find from the evidence that the
deceased, Thomas Gillooley, *was made aware of and
assented to this agreement, and being so aware and as-*

*senting, did flag trains of the defendant, the Louisville & Nashville Railroad Company, then under this finding the court instructs you that Thomas Gillooley would have been a servant of the defendant, the Louisville & Nashville Railroad Company, and likewise a fellow servant of the engineer and firemen of the train to be so flagged."*

The criticism upon this charge is that the trial judge made the question in respect of the relation of Gillooley to the defendant company depend upon his knowledge of the arrangement between the employing companies and his assent to the same. It is insisted the question should be made to turn upon the duties to be performed. It is said the contract of employment was made by one road for the benefit of all and the salary was prorated. The important feature of his employment, according to the contention of the company, is that it was as much the duty of Gillooley to flag for the L. & N. R. R. as it was to flag for the other companies, and that such was his invariable custom.

We are unable to give our assent to this proposition. There must be some privity of contract between the parties in order to warrant the application of the fellow servant doctrine.

In 2 Thompson on Negligence (1st Ed.), page 1043, it is laid down: "But there is no sound reason on which the servants of one master can be treated as fellow servants with the servants of another master. The rule which exempts the master from liability for an injury

Railroad v. Martin.

inflicted by one of his servants upon another is based upon an implied contract between a servant and his master, that the former will accept all the natural and ordinary risks incident to the business in which he is engaged, which include the negligence of those whom the master may associate with him. In this view of the reason of the rule, it is a rule based upon a privity of contract. This being so, it obviously does not apply between the persons between whom there is no *privity of contract.* A, when he entered into the service of B, impliedly says to B, 'You have selected fit and competent servants to work with me; I assume the risks of injuries from their negligence.' But he does not say, 'I assume the risks of injuries from the negligence of the servants of C, D, or E ,in connection with whom I may be obliged to work.' " *Zeigler* v. *The Danbury, etc., R. R. Co.,* 52 Conn. —; *Delaware R. R.* v. *Hardy,* 34 Atl. Rep., 987; *Railroad* v. *Ferch,* 44 S. W., 317; *Swanson* v. *Northeastern R. R.,* 3 Exchequer Dic. (The Law Reports), 341.

The proof shows that Gillooley was not advised of the traffic arrangement between these roads and was not aware of its terms nor did he assent thereto. It is manifest that his services could not have been transferred to the defendant company and the relation of master and servant thereby created without his consent.

But if it be conceded deceased was at the time of the accident the servant of defendant, we think it quite clear he was not the fellow servant of the crew that

killed him, for a reason he was in a different department of the service. As already shown, he had been placed at Dean avenue by the Frisco System in compliance with the city ordinance to admonish persons of the approach of trains.

We think the facts presented on this record make out a case of absolute liability on the part of the company. The crew in charge of the train causing the accident were not engaged in switching within the company's yard, but were employed outside of the yard transferring cars from its north to its south station.

The Clarkson case decided by this court and reported in 28 E. & A. R. R. Cases, 457, is not applicable to the facts of this case. It was held by this court in the Clarkson case, viz.: "If the accident occurs in switching operations proper and necessary *in and about the depot grounds and yards,* and whether on or off a street, the company is not required to observe the statutory precautions, though it is required to observe the care and caution which the dangerous conditions demand."

But here the train was not on the switching track, but on the main track. The defendant's switching yards extended 300 yards east of Main street, while the accident occurred three-fourths of a mile east of Main street. The trial judge was of opinion the statutory precautions did not apply to the facts of this case and his charge was rested alone upon the common-law duty enjoined on the company.

In failing to charge the statute we think the court committed error, but it has not resulted in prejudicing the rights of plaintiff in error. In *Railroad* v. *Dies,* 98 Tenn., 654, this court said, viz.:

"The liability of a railroad is absolute for killing a person upon its track by a backing engine and tender which are not engaged in switching within the company's yards. The statutory precautions apply in such a case and the manner of running the engine precludes the possibility of observance."

This rule had previously been announced by this court in *Railway Co.* v. *Wilson,* 90 Tenn., 271. In the latter case the judgment against the railroad in the court below had been rested on a breach of its common-law duty, and while this court was of opinion the reason given for the judgment was erroneous, the judgment was affirmed, because it already appeared there had been a breach by the company of its statutory duty.

For the reasons indicated, the judgment is affirmed.