LOUISVILLE & NASHVILLE RAILROAD COMPANY *v.* H. L.
W. CHEATHAM.

(*Nashville.* December Term, 1906.)

1. **INDEPENDENT CONTRACTORS.** Railroad construction contractors are independent contractors, and not mere servants, when.

> Railroad contractors in a contract with a railroad company for the reduction of grades and the taking out of curves on a certain section of the road, and for the construction of new railroad roadbed where required, are independent contractors under a written contract providing that the contractors shall furnish the requisite labor, teams, tools, engines, machinery, and materials and do the work to the satisfaction of the engineer of the railroad company; that the engineer shall have the right to make any alterations deemed necessary in the plan of the work, and to decide upon the quality and quantity of the work done; that no part of the contract shall be let or transferred without the written consent of the said engineer, and that the contractors shall discharge their disorderly employees at his direction; that whenever in the opinion of the engineer, the work will not be completed by the contractors with their force of hands within the specified time, he may employ additional workmen and charge to the contractors the amount paid to such workmen; and that the railroad company shall furnish necessary rails, etc., for temporary track for certain uses, without charge. (*Post, pp.* 164 182.)

Acts cited and construed: 1903, ch. 216.

Cases cited and approved: Iron Co. v. Dobson, 7 Lea, 367; Powell v. Construction Co., 88 Tenn., 697; Casement v. Brown, 148 U S., 615, 37 L. ed., 582; Bibb v. Railroad, 87 Va., 711; Rogers v. Railroad, 31 S. C., 378; Smith v. Milwaukee (Wis.), 64 N. W., 1041, 30 L. R. A., 504, 51 Am. St. Rep., 912; Boyd v. Railroad (Ill.), 75 N. E., 496, 108 Am. St. Rep., 253.

Railroad v. Cheatham.

2.  **SAME. Same. Admissibility of parol evidence to show the practical construction of a written contract by the parties; case of the insufficiency of the evidence.**

While parol evidence is competent and admissible to show that a written contract creating the relationship of independent contractors and employer was differently construed by the parties, and that the employer had in fact exercised a supervision and control over the work in its details inconsistent with such relationship, yet the evidence in this case was held to be insufficient to show that the relationship of independent contractors created by the written contract was changed by a practical construction of the contract so as to constitute the contractors mere servants and agents of the employer. (*Post, pp.* 182, 183, 186, 187.)

3.  **RAILROADS. Duty to provide other safe crossings, with warning notice, when relocating lines under statute.**

Under the statute (Acts 1903, ch. 216) authorizing and empowering railroad companies to relocate their lines for the purpose of taking out curves and reducing grades, etc., a railroad company has a right, in doing so, to obstruct temporarily a public road, street, or sidewalk crossing, where it becomes necessary in doing the work; but it is the duty of the company to provide some other safe and convenient crossing, with sufficient notice and warning to the passing or traveling public. (*Post, pp.* 187-189.)

Acts cited and construed:   1903, ch. 216.

4.  **SAME. Duty to provide safe passage to and from trains cannot be delegated to independent contractors, when.**

It is the duty of a railroad company to provide a reasonably safe passage to and from its trains for the benefit of its passengers, and this duty cannot be delegated to an independent contractor, or to any one else, so as to absolve itself from liability for injuries sustained by a passenger in consequence of a breach of this duty. (*Post, pp.* 188, 189.)

118 Tenn—11

5. **CONTRIBUTORY NEGLIGENCE.** Mitigates damages as a
matter of law, and not merely in the discretion of the jury.

Contributory negligence as a matter of law must go in mitigation
of damages, and the jury is not left to the exercise of any dis-
cretion in determining whether it may or may not be so con-
sidered, and the charge of the court that the jury can con-
sider the plaintiff's negligence or want of care in mitigation of
damages is erroneous. (*Post, p.* 189.)

Cases cited and approved: Railroad v. Nowlin, 1 Lea, 523; Railroad
v. Martin, 113 Tenn., 266.

6. **SAME.** Same. Charge erroneous as to contributory negli-
gence, but not prejudicial in results, is harmless, and is no
ground for reversal.

While, in an action for personal injuries, the charge of the court
is erroneous in merely permitting, but not requiring, the jury to
consider the plaintiff's contributory negligence in mitigation of
damages, yet there will be no reversal on account of such erron-
eous charge where it apears that the defendant was not prej-
udiced by the amount of the damages assessed, as where the
plaintiff was severely injured and a verdict was returned for
only five hundred dollars, indicating that any contributory negli-
gence on the part of the plaintiff had been fully considered in the
assessment of damages. (*Post, pp.* 189, 190.)

Cases cited and approved: Railroad v. Nowlin, 1 Lea, 523; Rail-
road v. Martin, 113 Tenn., 266.

7. **RAILROADS.** Jointly liable with independent contractor
for personal injuries sustained by a passenger falling into ex-
cavation on depot grounds, when.

A railroad company and its independent construction contractor
are jointly liable in damages for personal injuries sustained by a
passenger from falling into an excavation, made by the inde-
pendent contractor, in the sidewalk leading from the railroad
ticket office to the place where passengers get on and off the
trains, and left during the night without barricade or light to
admonish or apprise the public of the danger. (*Post, pp.* 190,
192, 193.)

Railroad v. Cheatham.

8. **CHARGE OF COURT.** Error not cured by other confusing and misleading instructions, when.

Where, in an action against a railroad company and its independent construction contractors for personal injuries sustained by plaintiff in falling into an excavation made on the depot grounds by such contractors, the court's charge, proceeding upon the idea that if it was the duty of the railroad company to place lights and barricades at proper places and to do all things necessary to prevent accidents, and that in consequence of a breach of this duty the plaintiff was injured, the railroad company would be liable, and the contractors excused, is erroneous, and the error is not cured by the further charge that if the railroad company had simply employed the contractors to do the work, and they did the work, and left it exposed and in a dangerous condition, without protection, then they together with the railroad company would be liable. The contractors are not relieved from liability, because the railroad company is also responsible for its omission of duty in failing to protect said dangerous excavation with a barricade or a display of signal lights at night. (*Post, pp.* 190-193.)

9. **RAILROADS.** Joint liability with independent contractor or mere servant is not relieved by improper exoneration of the contractor or servant, when.

A railroad company and its contractor, whether the contractor be an independent contractor or a mere servant or agent, are both jointly liable in damages for personal injuries sustained by a passenger from falling into an excavation made by the contractor in the depot grounds between the ticket office and where passengers get on and off the trains, and left during the night without a barricade or signal lights to admonish or apprise the public of the danger. The improper exoneration of the servant from liability does not relieve the master, where it is also incumbent upon the master to perform the duty omitted by the servant. (*Post, pp.* 191-193.)

FROM ROBERTSON.

Appeal in error from the Circuit Court of Robertson County.—B. D. BELL, Judge.

JOHN BELL KEEBLE, A. E. GARNER, and ED. T. SEAY, for Railroad.

TRUE & DORSEY and JOEL B. FORT, for Cheatham.

R. L. PECK, for Walton, Wilson, Rodes & Co.

MR. JUSTICE MCALISTER delivered the opinion of the Court.

The defendant in error brought this suit in the circuit court at Springfield against the defendants, the Louisville & Nashville Railroad Company and Walton, Wilson, Rodes & Co., to recover damages for personal injuries.. There was a verdict and judgment in favor of the plaintiff for $500 against the Louisville & Nashville Railroad Company, and a verdict in favor of Walton, Wilson, Rodes & Co. The Louisville & Nashville Railroad Company and H. L. W. Cheatham, the plaintiff below, appealed from the judgment of the circuit court, and have assigned errors in this court. The record discloses that on and before the 6th day of September, 1905, the

defendant railroad company was engaged in reducing grades and taking out curves in its line of railway through the village of Cedar Hill, and in prosecuting this work had employed the defendants Walton, Wilson, Rodes & Co. as contractors. On the 6th day of September, 1905, these contractors cut a deep hole or excavation in a sidewalk on Main street, and left the same during the night without a barricade or light to apprise the public of the danger.

It appears that defendant company maintained a depot or station in the town of Cedar Hill, in the northeast corner formed by the intersection of its railroad track and Main street, where it sold tickets to passengers and transacted other business. It further appears that the passage provided by the railroad company from its said ticket office to the place where passengers embarked on the trains was over and along this sidewalk where the excavation in question had been made.

It further appears that on the night of September 6, 1905, the plaintiff went to the defendant's ticket office and purchased a ticket from Cedar Hill to his home at Springfield, and then proceeded along the usual way to take passage on one of defendant's trains. The plaintiff testified that it was dark, and not knowing of the existence of the excavation in the sidewalk, and not being admonished thereof by any light or barricade, that he unwittingly walked into the same and sustained serious personal injuries. The plaintiff claimed to have been wounded and injured in the region of the kidneys,

in the spine, and in his left leg; that he suffered greatly in body and mind, and by reason of his said injuries lost about twenty-five or thirty pounds of flesh, and has been incapacitated to perform any kind of labor, and has been permanently injured.

The theory of the railroad, relied upon in the court below and now earnestly pressed in this court, is that upon the facts disclosed in the record Walton, Wilson, Rodes & Co. were independent contractors, and that the injuries were sustained by the plaintiff in consequence of their negligence in not protecting the excavation made by them in the sidewalk, and that no liability for said injury attaches to said railroad company.

The contract between the Louisville & Nashville Railroad Company and Walton, Wilson, Rodes & Co. for the performance of this work was in writing, and was construed by the circuit judge not to create the relation of independent contractor between the railroad and said firm. This construction of the contract is now claimed to be erroneous, and this assignment of error presents the principal question in the record. In the disposition of this question it is necessary to bring in review the prominent and distinguishing features of this contract which are relied on by the Louisville & Nashville Railroad Company to constitute the firm of Walton, Wilson, Rodes & Co. independent contractors:

"(1) That the said contractors are to construct and finish in a good, skillful, substantial, and workmanlike manner, and with all the requisite labor, teams, tools,

Railroad v. Cheatham.

engines, and machinery, and with materials sufficient and proper of their several kinds complete all and singular the grading, masonry, and such other work as may be required on the Henderson Division from a point 1,800, feet south of mile post 296 from St. Louis to a point 2,000 feet south of mile post 271 from St. Louis, in order to construct a new railroad roadbed where required between said points, and to change the grade of the existing roadbed where required between said points, said new railroad roadbed to be partly parallel to the existing roadbed and partly on new location, not parallel to the existing roadbed, and such grading as may be required for temporary position of the railroad company's tracks on the line of the Louisville & Nashville Railroad, according to the specifications, plans, profiles, sections, and drawings exhibited by the engineer of the railroad company at his office in Louisville, Ky., or by said specifications, plans, profiles, sections, or drawings implied or to be reasonably inferred therefrom, and will abide by, perform, follow, and fulfill all the stipulations, requisitions, and directions in said specifications set forth, which are hereby attached and made part of this contract.

"Said labor, teams, tools, engines, machinery, and materials to be furnished and the said work to be done by the said contractors to the satisfaction of the engineer of the railroad company, according to the said specifications, plans, profiles, and sections, according to such working plans and explanatory drawings and in-

structions as may from time to time be furnished by said engineer. . . .

"And it is further agreed that said engineer shall have the right to make any alteration that may be hereafter determined by him as necessary or desirable in the location, line, grade, plan, form, or dimensions of the work, either before or after the commencement of the same, and, in case such alterations increase the quantities, the said contractors shall be paid for such excess at the contract rates herein specified; but, should such alterations diminish the quantity or extent of the work to be done, they shall not under any circumstances be construed as constituting, and shall not constitute, a claim for damages, nor shall any claim be made on account of anticipated profits on the work that may be altered and dispensed with — the intent of this provision being that only the work absolutely done shall be paid for and at the price named in the schedule or list," etc.

. "And the said contractors further agree that they will not execute any work or make any modification or alteration in the work mentioned in said specifications, unless ordered in writing by the engineer, nor will they claim payment for the same unless such written order be produced," etc.

"The engineer shall decide on the quantity and quality of the work done, and his decision shall be final and conclusive. . . .

"The contractors agree to pay and to hold the railroad company harmless from:

Railroad v. Cheatham.

"(a) All debts or dues of the demands or claims against the contractors, or against any subcontractors for services and labor performed or materials furnished in said work, for provisions or supplies, board of men and teams engaged upon said work, and debts, dues, demands or claims growing out of said work, whether like or unlike those enumerated.

"(b) All claims for damages done by the contractors, subcontractors, or the employees of either, and to hold the railroad company harmless from all liens, garnishments, attachments, suits, causes of action in law or in equity, costs, expenses, and attorney's fees arising from or in connection with any or all the debts, dues, claims, demands, or damages in this and the preceding clause mentioned.

"If, out of any monthly estimate paid to the contractors they shall fail to pay the wages of the laborers for that month, it shall be at the discretion of the engineer thereafter to provide for the payment of laborers for each month out of the estimate for the month, according to such rules as he shall prescribe.

"The contractors shall, whenever requested to do so, furnish the engineer, in such detail as may be required by the engineer, statements in writing of all sums owed by the contractors or subcontractors for services rendered, labor performed, or material, supplies, tools, or machinery furnished or used in the performance of this contract.

"It is further agreed and understood, if at any time

the contractors shall refuse or neglect to prosecute the work with a force sufficient in the opinion of the engineer for its completion within the time specified in this agreement, then and in that case the engineer in charge, or such other person as the engineer may designate, may proceed to employ such a number of workmen, laborers, and overseers as may in the opinion of the said engineer be necessary to insure the completion of the work within the time mentioned at such wages as he may find it necessary or expedient to give, and charge the amount so paid to the contractors as a credit on the contract; or the said engineer may, at his discretion, for the failure to prosecute the work with an adequate force, or for noncompliance with his instructions in regard to the manner of construction, or for any other omission or neglect of the requirements of this agreement and specifications on the part of the contractors, declare this contract abandoned, which shall exonerate the Louisville & Nashville Railroad Company from any and all obligations and liabilities arising under this contract, and the reserve percentage of ten per cent. on any work done by the contractors may be retained forever by the said company.

"It is further agreed that the amount of force employed by the contractors is at all times subject to the regulation and must be increased or diminished as required by the engineer.

". . . It is distinctly understood and agreed between the parties that the work under this contract

shall at every stage of its progress from beginning to end be subject to the direction, inspection, and acceptance of the engineer, who shall determine what in any case is a fair construction of the contract, and what such construction requires to be done by their party, and his final measurements and classifications shall be final and conclusive upon both parties. . . .

"The Louisville & Nashville Railroad Company, in consideration of the faithful performance by said Walton, Wilson, Rodes & Co. of all and singular the covenants, promises, and agreements herein contained, hereby promises and agrees to pay to said Walton, Wilson, J. E. Rodes & Co., upon the full completion by them of all the work covered by this contract and the supplemental contract made a part hereof in the manner required by the specifications attached to and made a part hereof, and within the time herein specified and limited for the completion thereof, to the satisfaction, approval, and acceptance in writing of its engineer, for work done and material furnished at the rates or prices set forth .n the following schedule, or list, to wit."

Then follows the prices to be paid the contractors by the company for the different classes of work to be performed. The contract then provides for monthly estimates by the engineer of the value of the work done by the contractors during the preceding month, and for the payment of ninety per cent. of such estimates. The contract provides that, when all of the work shall have been completed agreeable to the specifications and

in accordance with the directions and to the satisfaction and acceptance of the engineer, there shall be a final estimate made of the quantity, classification, and value of said work agreeable to the prices set forth in said schedule, and the balance appearing to be due the contractors shall be paid to them, etc.

It appears that on the same day, to wit, March 9, 1905, a supplemental contract was entered into between these parties which provides, among other things: "The railroad agrees to furnish necessary rails, supplies, switches, and frogs for temporary track to be used in connection with steam shovel work without charge to the contractor, the rails to be delivered by the railroad company on board cars at its closest siding, and to be unloaded by the contractors promptly when delivered at the contractors' expense. The contractors agree, upon completion of the work, to reload the rails and other track material furnished by the railroad company at their expense on board cars to be provided by the railroad company," etc.

This supplemental contract also divided the twenty-five miles covered by the contract into eight sections, and many details were provided in respect of the character of the work to be done and the time when it should begin. Attached to this supplemental contract are the plans and specifications for the whole work, which are very elaborate and full of detail.

The contract called for an expenditure of more than $1,000,000, and the firm of Walton, Wilson, Rodes &

Co. were required to give bond for the faithful perform-ance of the contract, which they executed on the 31st day of March, 1905, in the sum of $60,000.

The question, then, presented for our consideration, is whether, under a proper construction of this con-tract, the Walton Company were independent contrac-tors, or whether they performed the work as the serv-ants of the railroad company. In *Powell* v. *Construc-tion Co.,* 88 Tenn., 697, 13 S. W., 692, 17 Am. St. Rep., 925, we read:

"An independent contractor is one who, exercising an independent employment, contracts to do a piece of work according to his own methods, and without being subject to the control of his employer, except as to the result of his work. The employer of such a con-tractor, if he be a fit and proper person, and the work be not in itself unlawful or a nuisance in itself, or necessarily attended with danger to others, will not be responsible for his negligence, or that of his sub-contractors, or his servants."

The court then quotes Mr. Thompson, in his work on Negligence, to the effect that "in every case the decisive question is, had the defendant the right to control in the given particular the conduct of the person doing the wrong?" Thompson on Negligence, 909.

"The fact that the general contractor sublets a part of the work embraced in his own contract and stipulates, as in the contract under consideration, 'that the work is to be done in a thorough and workmanlike manner to

the satisfaction of defendant's chief engineer,' will not be such an assumption of a right to control as to details or methods of doing the work as will make him responsible for the wrong of such subcontractor or his servants. Such a provision is nothing more than is usual and necessary in order to enable the employer to see that the work contracted for is carried out, and neither implies nor authorizes any such control of the details as would make the contractor his servant. . . .

"The fact that this contract provided that the track was to be laid as far as it should be ordered by the chief engineer of defendant does not take it out of the rules applicable to independent contractors." *Iron Company* v. *Dobson*, 7 Lea, 367.

In the case just cited, the contract was construed by this court to create the relation of an independent contractor. In *Bibb, Admr.*, v. *Norfolk R. R.*, 87 Va., 711, 14 S. E., 163, it was said:

"Where the employer selects with due care a contractor, and to him commits a work that is lawful and such as may be done without injury to third persons, and to be done in a workmanlike manner at a stipulated price, such employer cannot be held liable for injuries caused by the negligence of such contractor, or his servants, to third persons, not servants of such employer nor passengers on his cars."

In the case of *Rogers* v. *Florence R. R. Co.*, 31 S. C., 378, 9 S. E., 1059, the supreme court of that State, in

construing a contract very similar to that now before this court, said:

"A person engaged by a railroad company to grade the roadbed, who was to do the work himself, or by his servants or agents employed by himself at a stipulated compensation, is an independent contractor, and not an employee of the railroad, notwithstanding certain agreed stipulations under which the work was done, and which were intended to guarantee the faithful execution of the work, but which do not apply to the employment of an assistant engineer, the increase of the working force, and the discharge of improper hands when required by the company, the liability of the contractor for damages between himself and the company," etc.

It should be stated, further, that the contract in that case provided that the work was to be done subject to the approval of the chief engineer of the railroad company, and, further, that the railroad company should retain regularly in its service an assistant engineer to direct the execution of the work under the contract. It gave the engineer of the railroad company authority to require the contractor to place an additional force upon the work. The contractor was required to increase his force when required by the chief engineer. If the contractor failed to complete the work at the time agreed upon, the railroad company could hire hands and complete the work, etc.

Mr. Elliott, in his work on Railroads (volume 3, section 1063), states the law on this subject as follows:

"The liability of the company for injuries resulting from the negligence of the contractor depends primarily upon whether he is an independent contractor. An independent contractor may be defined as one who in the course of an independent occupation prosecutes and directs the work himself, using his own methods to accomplish it, and representing the will of the company only as to the result of his work. Generally, where an independent contractor is employed to perform a work lawful in itself and not intrinsically dangerous, the company, if it is not negligent in selecting the contractor, is not liable for the wrongful acts or negligence of such contractor, and, in order that the company shall be liable in such a case, it must appear that it either expressed or reserved the right to exercise control over the work, or had the power to choose, direct, and discharge the employees of the contractor. In general, it may be said that the liability of the company depends upon whether it has retained control and direction of the work. But neither the reservation of the power to terminate the contract when in the discretion of the engineer the work is not progressing satisfactorily, the right to exercise general supervision and inspect the work as it progressed, nor the right to enforce forfeiture, will change the relationship so as to render the company liable. The company may reserve the right to determine what work shall be done, but as a general rule the contractor must have control of the means by which it is to be accomplished, or he will not be liable for

the consequences. The fact that the contractor is paid by the day, or that the company pays the employees of the contractor directly, does not necessarily destroy the independent character of the employment. If the company have a public duty to perform, or if statutory duties rest upon it, the employment of an independent contractor, with entire control of prescribed work, cannot avert its liability. It must perform those duties or be directly liable for any neglect thereof. If the contract be in itself unlawful, as where the prosecution or result of the work is necessarily a nuisance, the company cannot escape liability by letting the work to a contractor."

Certain provisions of this contract are relied on by the plaintiff below to destroy the relation of Walton & Company as independent contractors to the railroad company, viz.:

"First. Labor, teams, tools, engines, machinery, and materials to be furnished, and the said work to be done by the said contractors to the satisfaction of the engineer of the railroad company, according to the said specifications, plans, profiles, and sections, and according to such working plans and explanatory drawings and instructions as may from time to time be furnished by said engineer."

We are of opinion the fact that the contract provides that the work is to be done to the satisfaction of the railroad engineer and according to the specifica-

tions and such explanatory drawings and instructions as may from time to time be furnished by said engineer does not affect the question of independent contractor. The company had a right to protect itself in this manner, but the mode of doing the work is left to be pursued independently by the contractors.

The next provision relied on is as follows:

"And it is further agreed that the said engineer shall have the right to make any alteration that may be hereafter determined upon by him as necessary or desirable in the location, line, grade, plan, form, or dimensions of the work, either before or after the commencement of the same."

This provision, it will be observed, is in reference to the location, grade, dimensions of the work, etc., which the contract makes subject to any alteration that may be required by the engineer, but does not touch the mode or manner of doing the work, which is left to the contractor.

The following paragraph in the contract is also relied on by the plaintiff below, viz.:

"The engineer shall decide on the quality and quantity of the work done, and his decision shall be final and conclusive. It is further covenanted and agreed that the contractors shall not let or transfer this contract, nor any part thereof, to any other person (except for the delivery of material), without the written consent of the engineer; nor shall the contractors employ any person or persons who commit depredations or insult trav-

Railroad v. Cheatham.

elers or other persons, and all such disorderly persons shall be discharged from employment whenever the contractors shall be directed so to do by the engineer in charge of the work."

The contract passed on by the supreme court of South Carolina in the case of *Rogers* v. *Florence Railroad,* supra, contained a provision identical with the above, and it was held by that court not to affect the independent character of the work by the contractor.

Again, plaintiff below relied on the following provision, viz.:

"That whenever the contractors are not prosecuting the work with a sufficient force of hands as in the opinion of the engineer is necessary for its completion within the time specified, that the engineer in charge may proceed to employ such workmen and employees as he may deem proper at such wages as he may find it expedient to give and pay all such persons so employed, and charge the amount so paid to the contractors."

This provision was evidently inserted for the purpose of expediting the work in the event the contractor fails to proceed with a sufficient complement of hands to complete it within the time specified, and does not undertake to control the mode or manner in which the contract shall be executed by the contractor.

Again, the following provision found in the supplemental contract is relied on:

"The railroad agrees to furnish necessary rails, splices, switches, and frogs for temporary track to be

used in connection with steam shovel work without charge to the contractors."

This provision does not, in our opinion, throw any light on this subject. It may be said generally, in respect of all the provisions which are relied on to destroy the independent character of the contractor under this contract:

"First, that the reservation by the employer of the right by himself or his agent to supervise the work, for the purpose of simply determining whether it is done in conformity to the contract, does not affect the independence of the relation. Am. and Eng. Ency. of Law (2d Ed.), vol. 16, p. 188; *Casement* v. *Brown,* 148 U. S., 615, 13 Sup. Ct., 672, 37 L. Ed., 582, and other cases cited in the note."

In *Rogers* v. *Railroad Co.,* supra, it is said:

"The point is, who is doing the work? Is the railroad doing the work by its employees, or is the contractor doing the work by his employees?"

In Elliott on Railroads, vol. 3, sec. 1063, it is said:

"But neither the reservation of the power to terminate the contract when in the discretion of the engineer the work is not progressing satisfactorily, the right to exercise general supervision and inspect the work as it progresses, nor the right to enforce forfeitures, will change the relation so as to render the company liable.

"The fact that the employer reserves the right to change the plans of doing the work, or that the work shall be done to the satisfaction of the employer, or

of an agent appointed by him or that the employer reserves the right to discharge any of the contractor's men, does not affect the question. A partial reservation or control in certain respects does not transform a contractor into a mere servant. If in fact the contract places the contractor in an independent relation, and he reserves general control over the work as to the manner of doing it and method of its execution, the fact that the employer reserves the right to prescribe what shall be done, but not how it shall be done or who shall do it, does not divest him of the character of a contractor. Wood on Master and Servant, 614."

"The right of supervision and the right of the engineer to see that the work was done according to the plans and specifications already prepared does not affect the question of independent contractor." *Casement* v. *Brown*, 148 U. S., 622, 13 Sup. Ct., 672, 37 L. Ed., 582.

"The fact that the work was to be performed under the specifications of an architect selected by the owner, and to the satisfaction of such architect, does not prevent the contractor from being an independent contractor." *Smith* v. *Milwaukee* (Wis.), 64 N. W., 1041, 30 L. R. A., 504, 51 Am. St. Rep., 912.

"The contractor who has control and direction of the methods and means for the performance of the work of constructing a railroad, the railroad retaining the right of general supervision and inspection to see that

the contract is properly performed, is an independent contractor and not a servant of the railroad company." *Boyd* v. *Railroad Co.* (Ill.), 75 N. E., 496, 108 Am. St. Rep., 253.

It cannot be contended that the work being prosecuted was a nuisance, since it was expressly authorized by chapter 216, p. 470, Acts of 1903. It was not a work necessarily attended with danger, but only required the exercise of ordinary care and prudence in its performance. In fact, the only matter complained of is that the defendants were guilty of negligence in not providing a barricade across the sidewalk or displaying signal lights to admonish travelers of the danger.

We are therefore of opinion, in view of the authorities cited touching this subject, that the contract now before the court did establish the relation of independent contractor of Walton & Company to the railroad.

It is contended, however, on behalf of plaintiff below, that as a matter of fact during the progress of this work the parties themselves had placed a different construction on this contract. In *Powell* v. *Construction Co.,* supra, it was said by this court:

"It was, of course, competent for the plaintiff to show that as a matter of fact the parties had put a different construction upon the contract by their conduct, and that defendant had in fact exercised a supervision and control over the work in its details inconsistent with the presumed character of Meredith & Horton as independ-

Railroad v. Cheatham.

ent contractors, thus making a liability outside of the contract."

It is insisted on behalf of plaintiff below that the railroad company through its civil engineer retained absolute direction and control of its work, including all of its details.  On this subject, Mr. Rodes, one of the contractors, testified in substance as follows:

"It was the duty of the section men of the railroad company to put danger signals there because of the fact that they were doing all the trackwork there.  We had nothing to do with the change of tracks.  This piece of work was not done by us as it was contemplated in the original contract that it should be done.  We really made a supplemental agreement with the chief engineer of the Louisville & Nashville Railroad by which he was to do all the trackwork that was necessary to be done and for us to do the grading necessary in doing that work.  There were two changes made in the original contract with reference to the work at Greenbrier and Cedar Hill; and under this change, with reference to Cedar Hill, the railroad company had the control and management of the track, and they had control and management of the highway (road crossing at Cedar Hill) while we were doing this work.  We did all the grading that was necessary to be done under the direction of Mr. Gallaher, the resident engineer for the railroad.  The railroad company paid us so much for hauling the dirt under his supervision and direction.  Mr. Gallaher (resident manager for the railroad company)

supervised and showed us how to do the work there; and, while we were making this cut across the public road, I instructed my men to see to it that the Louisville & Nashville Railroad men put obstructions there to block the road and keep people from running into the cut. It was the railroad company's business to protect this crossing, and the railroad did put up barriers or fences in the streets, and had boxes on this work in which to place red lights fixed so the trains approaching from either side could not see them, it was explained to me."

Counsel also relies on the testimony of Mr. Gallaher, who was civil engineer for the railroad company at Cedar Hill while the work in question was in progress. This witness was asked:

"Q. Whose duty is it, Mr. Gallaher, to keep warnings there to let the public know of the danger of the work that you have charge of for the Louisville & Nashville Railroad as civil engineer? A. That is the railroad's duty to keep warnings on their works.

"Q. Whose duty is it to put these warnings there? A. The people who were doing the work.

"Q. Who was doing the work? A. The contractors were doing the work at this place.

"Q. Didn't you have charge of it for the L. & N. R. R.? A. Yes, sir.

"Q. Were you not supervising it for the L. & N. R. R.? A. Certain parts of it.

"Q. Were you not supervising all these excavations

they were making for the L. & N. R. R.?    A.    I had certain control of them; not absolute.

"Q.    Didn't you direct when the cut was to be made? A.    Yes, sir.

"Q.    Didn't you direct how they were to be made? A.    Yes, sir; I gave them directions to make cuts.

"Q.    Who also, except you, gave any directions there to these parties that were making the cuts and excavations?    A.    None that I know of.

"Q.    Then why did you hesitate in making that statement, and try to say that it wasn't the railroad's duty to do it?    A.    Which statement?

"Q.    Just now, when I asked you whose business it was and who had charge of it?    A.    Well, the railroad is, of course, supposed to keep a signal on the work they have under control at all public places.    Then, on the other hand, there are parties who are doing the work, contractors.    It is their duty to keep their parts of the work protected against the public.

"Q.    Isn't it as much your duty as the supervisor of the construction work at this point, and wasn't it as much your duty on this occasion when these excavations were being made to protect it and have those signals there to warn the people of this danger as it was anybody else's?    A.    Yes; I suppose it was.

"Q.    Did you warn Wilson, Walton, Rodes & Co. to put signals and lights there to warn the public?    A. Yes; I warned them to protect their work.

"Q.  Is that all you said to them?  A.  Yes; according to their contract."

On redirect examination, the witness was asked:

"Q.  You say you were the engineer in charge?  A. Yes, sir.

"Q.  It was your duty to see that the work was done according to contract?  A.  According to contract and profiles I had in my hand."

Now, it will be observed that the witness Rodes was of opinion it was the duty of the railroad company to display danger signals at the point of the accident, for the reason the railroad was doing all the trackwork and the contractors had nothing to do with the change of tracks.  But it appears from the proof that the injuries were sustained by the plaintiff in consequence of an excavation that had been made by the contractors, and not as a result of the laying of tracks or the change of tracks by the railroad company.

It thus appears that the breach of duty that resulted in injury to the plaintiff was that of the contractors, and not of the company.  Again, the substance of the testimony of the engineer in charge was that he was giving instructions according to the contract and the profiles he held in his hand, and that the work was being done by Walton & Company as contractors, and not as agents and servants of the company; moreover, while it was the opinion of the engineer that it was the duty of the railroad company to warn the public of danger at public crossings, that it was primarily

the duty of the contractors to have protected this dangerous excavation.

We are therefore of opinion that the relation of independent contractor occupied by Walton & Company to the railroad company under the contract was not changed by any practical construction of the contract in the performance of the work, so as to constitute the contractors mere servants and agents of the railroad company.

It may be observed that the railroad company was expressly authorized to perform this work by chapter 216, p. 470, Acts of 1903, as follows:

"That any railroad company owning or operating a railroad or any part thereof in Tennessee, or that may hereafter do so, whether chartered under the laws of the State of Tennessee or under the laws of any other State, be, and it is hereby, authorized and empowered to relocate any parts of its lines for the purpose of taking out curves and reducing grades, and to build embankments for the purpose of avoiding trestles upon which the railroad may be constructed, or to widen cuts when necessary for proper construction and to build second main or double tracks, turnouts, switches, stations and depots for terminal facilities," etc.

On this subject the trial judge instructed the jury as follows:

"Under the law the railroad company had a right to change its roadbed and cut out the grades, and it had a right in doing so temporarily to obstruct this

public road or this street crossing, if it was necessary for them to do so in order to accomplish their work and lower the grade, or cut down the grade, or change the direction of their road; but it was their duty to provide some other crossing that was safe, and it was their duty to have that crossing in a good condition so that people could conveniently pass over it, and it was their duty to put up a notice of some kind or to give the passengers, travelers, and people who travel on horseback or otherwise over this road, or over this street, or over this sidewalk, warning. It was their duty to put up such warning as would reasonably notify the passengers that they could not cross there, and if they failed to do so, and their negligence in failing to do it resulted in injury to the plaintiff, they would be liable."

Again the court charged the jury: "It is the duty of the company to provide a safe place, a reasonably safe place, for passengers to alight, and a reasonably safe place for the passengers to go to the depot and buy their tickets; and if they failed to provide a reasonably safe place for this purpose, and injury resulted to a passenger in getting on or off the train by reason of this negligence, the railroad will be liable."

While we are of opinion the circuit judge was in error in his construction of the contract, and in charging the jury that Walton & Company were not independent contractors, the court was not in error in defining the duty of the railroad company to provide a reasonably safe passage to and from its trains for the benefit of its

passengers, and that this duty could not be delegated to an independent contractor, or to any one else, so as to absolve the railroad company from liability for injuries sustained by a passenger in consequence of a breach of this duty.

We will proceed to notice in detail the assignments of error filed on behalf of the Louisville & Nashville Railroad.

The first assignment is that the court erred in instructing the jury on the subject of contributory negligence as follows: "You 'can' consider his want of care or negligence in mitigation of damages." It is said the court should have charged that the jury "must" take into consideration the negligence or want of care of the plaintiff in mitigation of damages. In *Railroad* v. *Martin,* 113 Tenn., 266, 87 S. W., 421, this court said: "Contributory negligence as a matter of law must go in mitigation of damages, and the jury is not left to the exercise of any discretion in determining whether it may or may not be so considered, and the charge of the court that 'the negligence of the deceased may be considered by the jury in mitigation of damages' is erroneous."

In *Nashville & Chattanooga R. R. Co.* v. *Nowlin,* 1 Lea, 523, the circuit judge instructed the jury as follows: "The negligence of the person in all cases can be looked to in mitigation of the damages or amount of recovery." That charge was held to be erroneous; but where the court can see from the verdict that, notwithstanding the erroneous charge on the subject of con-

tributory negligence, the jury has mitigated the damages, the error is not prejudicial and not reversible. In *Railroad Co.* v. *Martin,* supra, this court declined to reverse the case on account of the erroneous charge, since it appeared that the defendant had not been prejudiced by the damages assessed. In that case a remittitur was entered on account of the excessive damages. So, in the present case it appears that, notwithstanding the plaintiff was severely injured, the jury only returned a verdict for the sum of $500, indicating that any contributory negligence on the part of the plaintiff had been fully considered in the assessment of damages.

The fifth, sixth, and seventh assignments of error are based on the refusal of the trial judge to submit certain instructions to the jury which were requested by counsel for the railroad. These instructions are based on the idea that Walton & Company were independent contractors, and that they were charged with the duty of providing barricades and signal lights to admonish the public of the dangerous excavation, and if they failed to perform this duty the contractors would be liable, and no liability would attach to the Louisville & Nashville Railroad.

These instructions were properly refused, since we have adjudged the law to be that defendant railroad company could not absolve itself from liability to passengers in its depot grounds by reason of any contract it might make with independent contractors. This lia-

Railroad v. Cheatham.

bility of the railroad company is based both upon common-law and statutory principles.

The eighth assignment is that the court erred in charging the following request submitted on behalf of Walton & Company, viz.:

"If you find from the proof that the defendant railroad company had its civil engineer at Cedar Hill in charge of the work which the contractors, defendants Walton, Wilson, Rodes & Co., were doing, that said engineer had authority to and did instruct the contractors when, where, and how to do their work, and, further, that it was the duty of Walton, Wilson, Rodes & Co., its servants and agents or employees, to place lights at proper places, and do any and all things needful to prevent accident, and if you find that the plaintiff was injured at the point where he says he was, and that said injury was caused by the failure of the railroad company to keep lights there, or exercise other and precautionary measures, then the contractors would be excused from liability, and you should so find in your verdict."

The court replied: "Gentlemen of the jury, I charge this to you, with the addition that, if this is shown by a preponderance in the case, that would be true, and I would add this, further:  But if the proof shows that the railroad company simply had them employed to do the work, and they did the work, and left it exposed and in a dangerous condition, without protection, then they, together with the railroad company, would be liable."

We are of opinion the first paragraph of this instruction was erroneous, and should not have been submitted to the jury. It proceeds upon the idea that if the jury find from the proof that it was the duty of the railroad company to place lights at proper places and to do all things needful to prevent accidents, and that in consequence of this breach of duty on the part of the railroad company the plaintiff sustained his injuries, the railroad would be liable, and the contractors would be excused. This is an erroneous view of the law. The proof is undisputed that the contractors made the excavation in the sidewalk which occasioned the injury to the plaintiff, and failed to protect it. He was, therefore, liable for any injuries sustained by the plaintiff as the result of his tortious conduct, and would not be relieved from liability, although the railroad company might also be responsible for its omission of duty in failing to protect said dangerous excavation with a barricade or display of signal lights. The instruction with which the circuit judge supplemented this request did not relieve it of its error. It was misleading to the jury, and may account for their action in relieving the contractor of any liability in the premises.

The railroad and the contractor were both onerated with the legal duty of observing proper precautions to prevent injury to passengers and others in consequence of this excavation so near the traveled way in the depot grounds of the company. For this error in the charge of the court, the verdict of the jury and judgment of the

court in favor of Walton, Wilson, Rodes & Co. must be reversed, and a new trial awarded.

The ninth assignment is that the verdict of the jury shows passion, prejudice, and caprice. This assignment is not based so much upon the amount of the verdict, which was only $500, as upon the fact that the jury exonerated the contractors from all liability and placed the whole responsibility for the accident upon the railroad company.

In this connection, an elaborate argument has been submitted on behalf of the railroad to show that, conceding Walton & Company were performing this work as the agents and servants of the railroad, the exoneration of the servant from liability released the master. But, since we hold Walton & Company to be independent contractors, they are liable with the railroad as joint tortfeasors. If, however, the relation of the railroad and Walton & Company had been that of master and servant, the latter, having made the excavation in the sidewalk and failed to protect it, would be jointly liable with the railroad.

For the reasons stated, the judgment against the railroad company will be affirmed, while the judgment in favor of Walton, Wilson, Rodes & Co. will be reversed, and the cause remanded for a new trial.