## Tennessee Coal and Railroad Company *v.* Roddy, Administrator.

### (*Nashville.* February —, 1887.)

NEW TRIAL. *Amount of verdict, a matter for the jury. Personal torts.*

In actions for damages for personal torts, it is within the strict province of the jury to estimate the extent of the injury, and assess the amount of the damages; and unless there is on the part of the jury such manifest abuse of this trust, as to indicate passion, partiality, unaccountable caprice, or corruption, the trial Judge should not set aside their verdict, although he may be of opinion that it is excessive in amount. *A fortiori,* this Court will not set aside a verdict, in such case, on the ground that the trial Judge, though refusing to set it aside, disapproved the amount thereof, as being excessive.

Cases cited and approved: Boyers *v.* Pratt, 1 Hum., 93; Goodall *v.* Thurman, 1 Head, 217; 12 Johns, 236; 1 Burrow, 609; 6 East, 244.

(See Railroad Co. *v.* Higgins, *post,* p. —.)

Cited and distinguished: England *v.* Burt, 4 Hum., 399; Jones *v.* Jennings, 10 Hum., 428; Nailing *v.* Nailing, 2 Sneed, 631; Vaulx *v.* Herman, 8 Lea, 687.

(See Turner *v.* Turner, *ante,* p. 387.)

Cited and overruled: *Dictum* in Railroad Co. *v.* Foster, 10 Lea, 366.

---

### FROM WILSON.

---

Appeal in error from Circuit Court of Wilson County. ROBT. CANTRELL, J.

EAST & FOGG, C. D. PORTER, and TARVER & GOLLADAY, for Railroad Company.

BATE & WILLIAMS, THOMPSON & SON, and GRIBBLE & BRANTLEY, for Roddy.

Tennessee Coal and Railroad Company *v.* Roddy, Administrator.

LURTON, J. The intestate of the defendant in error, James K. Legg, was a locomotive engineer in the service of the plaintiff in error, and while thus in their service was killed by and through the negligence of his employer. Suit was instituted by his administrator to recover damages. There have been three trials of the cause. There was a verdict for $6,400 as a result of the first trial. The record shows that the Circuit Judge, deeming the verdict excessive, ruled, upon the motion for a new trial, that a new trial should be granted unless the plaintiff below would remit $3,400 of his verdict. This the plaintiff declined to do, and a new trial was granted. The second trial resulted in a hung jury. The third and last trial, and the one now under consideration, resulted in a verdict for $8,000. From the judgment on this verdict the plaintiff in error has appealed.

The Commission of Referees having heard the case, recommend a reversal in an able and carefully prepared report, wherein they place their recommendation expressly upon the ground that the judgment entry overruling the motion for a new trial shows that the Circuit Judge was of opinion that the verdict was excessive under the facts of the case, yet had refused to grant a new trial. The entry refusing a new trial was as follows:

" The motion for a new trial having been heard, the Court declines to set aside the verdict, but does not approve the same. The Court at a former

term set aside a verdict for a smaller amount because it was excessive for the facts of the case, and the Court now is of opinion that if any recovery at all was proper, the verdict is excessive; but to terminate the litigation in this case the verdict is sustained that the Supreme Court may pass on these facts, this Court having tried the case for the third time."

Taking into consideration all the parts of this entry, and particularly the recital that he had once before granted a new trial, not because it was against the weight of the proof or contrary to law, but expressly upon the ground that he thought the verdict excessive, we are of opinion that the disapproval of the verdict expressed by the Judge is based not upon any dissatisfaction with a verdict for the plaintiff below, but a disapproval of the amount of the damages. He thought it excessive upon the facts, but evidently did not think it so excessive as to indicate passion or prejudice, and make it his duty to set it aside. On the contrary, he expressed a desire that the parties should submit the case upon the verdict to the Supreme Court. If he was not satisfied that under the facts and law that the plaintiff should have a verdict, it was his plain duty to set it aside and grant a new trial. The doctrine is well settled in this State that if the Circuit Judge is of opinion that a verdict is against the weight of the evidence, or is contrary to the law as charged by himself, he should grant a new

trial. The rule of this Court that it will not disturb the verdict of a jury upon facts fairly submitted to them upon a correct charge, unless there is a great preponderance of evidence against the verdict, is based very largely upon the fact that a different rule governs the Circuit Judge in considering motions for new trials. The Court attaches great weight to the fact that the Circuit Judge, having seen and heard the witnesses testify, and having submitted the case to a jury known to himself, has stamped the verdict with his approval by refusing to grant a new trial. Much of the importance and weight attached to jury trials proceeds from the presumption that an intelligent and learned Circuit Judge, accustomed to weighing evidence, has scrutinized the proof, looked into the faces of the witnesses, and indorsed the action of the jury. The integrity and value of jury trial will largely disappear if Circuit Judges shall endeavor to avoid the duty imposed upon them by law in this regard. If he is dissatisfied with the verdict, he ought to set it aside; and this Court has held that where this dissatisfaction appears in the record, this Court will do what he ought to have done—grant a new trial. *England* v. *Burt*, 4 Hum., 399; *Jones* v. *Jenning*, 10 Hum., 428; *Nailing* v. *Nailing*, 2 Sneed, 631; *Vaulx* v. *Herman*, 8 Lea, 687.

It is insisted that this rule applies to this case. This would be so if the dissatisfaction of the Circuit Judge clearly appeared to be due to any

finding for the plaintiff below. But we have construed, and do construe, the entry refusing a new trial in this case, not as indicating the disapproval of any verdict for the plaintiff. We construe the entry as simply indicating the belief of the Circuit Judge that the damages were excessive; yet not so excessive as to require him to set aside the verdict. It is insisted, however, that the disapproval of the amount of the verdict is in itself enough to have made it the duty of the Circuit Judge to have granted a new trial, and that under the doctrine of the cases of *England* v. *Burt,* 4 Hum., 399, and *Vaulx* v. *Herman,* 8 Lea, 687, that the dissatisfaction of the trial Judge with the verdict appearing, that this Court ought to grant a new trial. This brings us to a consideration of the question as to whether the fact that the trial Judge deems the damages assessed by the jury in a civil action for a personal tort is excessive, is ground for a new trial.

In actions *ex contractu,* even if sounding in damages, the proof affords some definite and fixed rule and standard by which the judgment of the jury may be tested. An excessive verdict in all such cases is ground for new trial. So, as before stated, in any class of case, if the verdict is contrary to the law, or to the weight of the evidence, it is ground for new trial in *nisi prius* trials. But in actions for personal torts sounding in damages we understand the rule concerning new trials for mere excessive damages to be very different.

At one time it was doubted whether in cases of mere personal torts the Court had the power to interfere on the ground of excessive damages, or the contrary.

"But the practice has long been settled conceding to the Court the right to control verdicts in relation to damages, as well as every other incident, in all cases without exception; with this exception, however, that on questions of contract, or when an ascertained test of the correct amount is furnished, the Court interposes the correction with less reluctance than in cases of mere injury, where the damage is at large and the finding on that point must be arbitrary." Graham & Watterman on New Trials, Vol. I., side page 410.

The distinction between the rules governing new trials in the two classes of cases has long been recognized at the common law. Justice Buller, upon the question, said:

"In actions founded upon torts the jury are the sole judges of the damages, and therefore in such cases the Court will not grant a new trial on account of the damages being trifling or excessive. But in actions founded upon contract, and where debt would lie, the Court will inquire into the circumstances of the cases, and relieve if they so reason."

In the case of *Duberly* v. *Gunning*, 1 Burrow, 609, there was a verdict for the plaintiff of £5,000 damages, the action being one by the husband for the seduction of his wife. Upon a motion for a

new trial upon the ground of the excessiveness of the damages, Lord Kenyon, C. J., said:

"Under all the circumstances, I think the damages were much larger than ought to have been given. But here I doubt what conclusion I ought to draw from all the premises; and my difficulty arises from my being unable to fix any standard by which I can ascertain the excess which, according to my view of the case, I think the jury have run into. Where there is no such standard, how are the errors of the jury to be rectified? What measure can we point out to them by which we ought to be guided? I should have been satisfied even if nominal damages only had been given; but as the jury have formed a different judgment upon the evidence, I know not why my judgment should be preferred to theirs upon such a subject."

The rule was discharged. In the case of *Chambers* v. *Caulfield*, 6 East, 244, it being an action for seduction in which there was a verdict for £2,000, upon a motion for a new trial, Lord Ellenborough delivered the opinion of the Court, and said:

"As to the second ground upon which the new trial was moved for—that of excessive damages—if it appeared to us, from the amount of the damages given, as compared with the facts of the case laid before the jury, that the jury must have acted under the influence either of undue motives or some gross error or misconception on the sub-

ject, we should have thought it our duty to submit the question to the consideration of another jury; but this does not, upon a review of the whole evidence, appear in the present instance to have been the case."

In Graham & Watterman's very exhaustive work upon New Trials, Vol. I., side page 452, the editors, after discussing a great array of cases bearing upon the subject now under consideration, sum up the authorities as follows:

"It is clear the reason for holding parties so tenaciously to the damages found by the jury in personal torts is that in cases of this class there is no scale by which the damages are to be graduated with certainty. They admit of no other test than the intelligence of a jury governed by a sense of justice. It is, indeed, one of the principal causes in which the trial by jury has originated. From the prolific fountain of litigation numerous cases must daily spring up calling for adjudication for alleged injuries accompanied with facts and circumstances affording no definite standard by which these alleged wrongs can be measured, and which, from the necessity of the case, must be judged of and appreciated by the view that may be taken of them by impartial men. To the jury, therefore, as a favorite and almost sacred tribunal, is committed by unanimous consent the exclusive task of examining those facts and circumstances and valuing the injury and awarding compensation in the shape of damages. The

law that confers on them this power and exacts of them the performance of the solemn trust, favors the presumption that they are actuated by pure motives. It therefore makes every allowance for different dispositions, capacities, views, and even frailties in the examination of heterogeneous matters of fact where no criterion can be supplied; and it is not until the result of the deliberations of the jury appear in a form calculated to shock the understanding and impress no dubious conviction of their prejudice and passion that courts have found themselves compelled to interpose."

The decisions of this Court have been in harmony with the common law rule, as we have ascertained it to be in the authorities cited. In the case of *Boyers* v. *Pratt,* 1 Hum., 93, Judge Turley said that in actions for pure personal torts new trials are sometimes granted because of the enormity of the damages. It is never done unless, in the language of Judges Thompson and Spencer, in the case of *McConnell* v. *Hampton,* 12 Johns., 236, "the damages are flagrantly outrageous and extravagant, evincing intemperance, passion, partiality, or corruption, such as all mankind would pronounce unreasonable."

In the case of *Goodall* v. *Thurman,* 1 Head, 217, this Court, in answering an argument for a new trial, based upon the alleged excessiveness of the damages recovered in an action for seduction, said: "After all, we do not feel authorized to

Tennessee Coal and Railroad Company *v.* Roddy, Administrator.

grant a new trial in this case upon the single ground of excessive damages, although we consider the amount entirely disproportionate to the case made in the proof.    The law on this subject is correctly laid down in 2 Greenleaf Ev., Section 255:  "In trials at common law the jury are the proper judges of damages; and when there is no certain measure of damages the Court ordinarily will not disturb their verdict, unless on grounds of prejudice, passion, or corruption in the jury."    To this rule we have conformed our practice, and it is the only safe one on the subject.    In view of the rule at common law, and as discovered in the decisions of our predecessors on this bench, we hold that in actions for damages for personal torts that it is within the strict province of the jury to estimate the extent of the injury and assess the damage, and that unless there is a manifest abuse of this trust, such as to indicate passion, prejudice, partiality, or unaccountable caprice or corruption, that the trial Judge ought not to interfere.    It follows, *a fortiori*, that where the trial Judge has simply expressed his disapproval of the verdict as being excessive, yet has refused to set it aside, that this Court will not, alone upon the ground of such disapproval or dissatisfaction with the amount of the verdict, grant a new trial. The rule laid down in the decisions of this Court, concerning the granting of a new trial where the Circuit Judge has expressed dissatisfaction with the verdict, does not apply in actions for personal torts,

where the disapproval of the Judge is limited to the excessiveness of the verdict. The intimation to the contrary, in *Railroad* v. *Foster*, 10 Lea, 366, by Special Judge Cooke, was unnecessary to the decision of that case, and was therefore *dictum*. Passing from the duty of the Circuit Judge, in view of his expressed doubts as to the excessiveness of this judgment, to the application made now to us to grant a new trial for excessiveness of damages upon the facts of this case.

The intestate of the plaintiff in error is shown by the proof to have been a young and healthy man, with an expectancy of life of thirty-one years. He left a wife and child. He was receiving wages of four dollars per day. He was sober, prudent, and industrious. The circumstances of his death were very distressing, and his suffering was intense. There is evidence justifying the jury in believing that his engine was thrown from the track by reason of a defect in the road at a sharp and dangerous curve on the mountain side, near Cowan, Tenn. Of this defect the company had notice, the proof showing that the company's track-walker had several times shortly before the accident notified the section boss that the track at this very point where the engine—upon which the deceased was at the time he met his death— was thrown from the track was out of alignment, and had lost elevation, and that the derailment of a train at that point was to be apprehended. This warning was neglected. There was likewise

proof justifying the jury in finding that the engine furnished deceased that day as a substitute for the one usually driven by him was out of tram, and that the driving wheels did not, as a consequence, follow each other, and that this defect made the engine very liable to leave the track. That the deceased knew of this habit of this engine to jump the track we do not think fairly inferable from the proof.  That he objected to taking this engine is shown, and that he finally yielded and took the engine when the master machinist offered to go in his place is proven.  But we think his objections to this engine were wholly based on ground not affecting its road worthiness; besides, the master mechanic, whose duty it was to furnish him with an engine, assured him that the engine was in thorough repair.

Under all the facts of the case we cannot say that the verdict is excessive to a point indicating either partiality, passion, prejudice, caprice, or corruption.  No error in the charge is complained of. The report of the Referees will be set aside, and the judgment of the Circuit Court affirmed.