GRANT *et ux. v.* LOUISVILLE & NASHVILLE RAILWAY
COMPANY, *et al.**

*(Nashville.* December Term, 1913.)

1. **NUISANCE. Persons liable. Landowners.**

An owner of real property is not responsible for a nuisance
erected thereon without his knowledge, actual or constructive,
and generally it must have been created by his authority.
(*Post, p.* 403.)

Case cited and approved: Railroad v. Cheatham, 118 Tenn., 160.

2. **RAILROADS. Persons liable. Landowners.**

Where parties, who had contracted with a railroad company to
construct an underpass beneath its tracks 100 or more feet
from the street, about 6 oclock in the morning placed a porta-
ble forge, which made much noise and emitted a good deal of
smoke, at a point near the street, and an accident, resulting
from a horse becoming frightened, occurred about four hours
later, before the railroad company or any person connected
with it had any knowledge of such location, the lapse of time
was insufficient to charge it with constructive notice. (*Post, p.*
404.)

Cases cited and approved: Skelton v. Fenton Electric Light, etc.,
Co., 100 Mich., 87; Moore v. Townsend, 76 Minn., 64; Gulf, etc.,
R. Co. v. Chenault, 31 Tex. Civ. App., 553.

Case cited and distinguished: Davis v. Lumber Co., 126 Tenn.,
584.

3. **MASTER AND SERVANT. Independent contractors. Nui-
sance.**

Where a railroad company employed an independent contractor

---

*As to the liability of an employer for nuisance committed
by independent contractor, see notes in 65 L. R. A., 751; and 66
L. R. A., 146, 948.

On the question of the power of the trial court to cure an
excessive verdict by requiring or permitting a renduction where
true measure of damages not ascertainable by mere computation,
see note in 39 L. R. A. (N. S.), 1064.

Grant v. Railroad.

to construct an underpass beneath its tracks 100 or more feet from the street, and the contractor placed a portable forge near the street on the railroad company's land, though not directed by the railroad company, which did not know thereof, to do so, and though the forge might have been, and ordinarily would have been, located near the work, the contractor alone, and not the railroad company, was liable for the damages resulting from a horse becoming frightened at such forge. (*Post, p.* 405.)

4. DAMAGES. Excessive damages. Reduction.

The power of the trial court to suggest a remittitur, in a case of tort involving unliquidated damages, may be exercised where the verdict is merely excessive, and is not limited to cases where passion, prejudice, or caprice on the part of the jury appears. (*Post, p.* 406.)

Cases cited and approved: Branch v. Bass, 37 Tenn., 366; Railroad v. Jones, 56 Tenn., 27; Young v. Cowden, 98 Tenn., 577; Massadillo v. Railway Co., 89 Tenn., 661; Northern Pacific R. R. Co. v. Herbert, 116 U. S., 642; Ark Cattle Co. v. Mann, 130 U. S., 73; Koenigsberger v. Richmond Silver Mine Co., 158 U. S., 53; Hayden v. Sewing Machine Co., 54 N. Y., 221; Doyle v. Dixon, 97 Mass., 218; Blunt v. Little, 3 Mason, 102; Burdict v. Mo. Pac. R. Co., 123 Mo., 221; Railroad v. Roberts, 113 Tenn., 488; Tunnell Hill, etc., Co. v. Cooper, 50 Colo., 390; Telegraph Co. v. Frith, 105 Tenn., 167; Moore v. Burchfield, 48 Tenn., 203; Nashville & Chattanooga R. Co. v. Smith, 53 Tenn., 174; Railroad v. Roddy, 85 Tenn., 400, Railroad v. Stacker, 86 Tenn., 343; Railroad v. Griffin, 92 Tenn., 649.

5. DAMAGES. Excessive damages. Reduction.

Though a verdict is so excessive as to indicate that it was influenced by passion, prejudice, or caprice, it may be cured, and will stand, if a remittitur is accepted by plaintiffs, and the verdict reduced to a reasonable amount. (*Post, p.* 408.)

Cases cited and approved: Railroad v. Roberts, 113 Tenn., 488; Railroad v. Roddy, 85 Tenn., 400.

6. DAMAGES. Excessive damages. Reduction.

The trial judge, in an action for personal injuries, who saw plaintiff and heard her injuries described, might infer passion, prejudice, or caprice on the part of the jury from an excessive verdict alone. (*Post, p.* 409.)

7. APPEAL AND ERROR. Review. Amount of damages.

Under Acts 1911, ch. 29, providing that, when the trial judge suggests a remittitur because of prejudice, partiality, or unaccountable caprice, plaintiff may accept the remittitur under protest, and appeal, the supreme court will not ordinarily interfere with the decision of the trial court. approved by the court of civil appeals, as to the amount of damages. (*Post, p.* 410.)

Acts cited and construed: Acts 1911, ch. 29.

---

FROM MAURY.

---

Appeal from the Circuit Court of Maury County, to the Court of Civil Appeals, and by *certiorari* from the Court of Civil Appeals to the Supreme Court.— W. B. TURNER, Judge.

FIGUERS, HOLDING & GARNER, for plaintiffs.

HUGHES & HUGHES and E. H. & C. P. HATCHER, and THOMAS H. MALONE, for defendants.

MR. JUSTICE LANSDEN delivered the opinion of the Court.

This was an action for damages, brought by W. Y. C. Grant and his wife, Mrs. Susie Grant, against the Louisville & Nashville Railroad Company, the Nash-

ville, Chattanooga & St. Louis Railway Company, and
W. N. McDonald and W. J. Thompson, partners doing
business under the name of the Nashville Concrete
Company.

McDonald was never served with process. A nonsuit
was taken as to the Nashville, Chattanooga & St. Louis
Railway Company, and upon the trial the court directed
a verdict in favor of the Louisville & Nashville Rail-
road Company, and submitted the case to the jury as to
W. J. Thompson, and the jury returned a verdict
against Thompson for $3,500. The court suggested a
remittitur of $1,500, which the plaintiffs accepted un-
der protest.

The plaintiffs below appealed in error to the court
of civil appeals, and in that court assigned as error
the action of the trial judge in directing a verdict in
favor of the railroad company, and also his action in
suggesting a remittitur of $1,500. The court of civil
appeals, in a majority opinion, approved the reduction
of the verdict, but reversed the judgment of the court
below in the matter of the directed verdict, and re-
manded the case for further proceedings against the
railroad company.

Grant and wife have filed a petition for *certiorari*,
in which they again challenge the propriety of the re-
duction of their verdict against Thompson. The rail-
road company has filed a petition for *certiorari,* in
which it assigns as error the action of the court of
civil appeals in reversing the judgment of the circuit

court embodying a directed verdict in its behalf. Both of these petitions have been granted, and the case has been fully argued in this court.

The Louisville & Nashville Railroad Company had a contract with McDonald & Thompson, whereby the latter firm was to construct an underpass beneath certain tracks of the railroad company near the city of Columbia. The railroad company seems to have owned a considerable plot of ground at this point, through which its tracks ran. The proposed underpass was 100 or more feet from the street. The property of the railroad company, however, it being vacant land, extended to the street. These contractors were engaged in this work, and in connection with the work were using a portable forge, which made much noise and emitted a good deal of smoke.

On the morning of the accident, the contractors had located this forge at a point very near the street, and a gentle horse, attached to a buggy driven by Mrs. Grant, took fright at this object as she was passing, ran away, and overturned the vehicle, inflicting upon her the injuries on account of which this suit was brought. This runaway occurred about 10 o'clock in the morning. It appears that there was no necessity for locating the forge at the particular point which it occupied on this occasion. The proof shows that it was put at this place on this morning for the first time, and the railroad company had no notice that the forge had been so located. There seems to have been no necessity for placing the forge so close to the street. It

might have been more conveniently operated nearer to the work, 100 feet away.

The defense urged in behalf of the railroad company is that McDonald & Thompson were independent contractors, and that the company is not liable for damages resulting from their negligence.

There is a great controversy in the case as to whether McDonald & Thompson were in fact and in law independent contractors in the prosecution of this work. The contract between them and the railroad company is set out in the record and has been the subject of much discussion. The circuit judge was of opinion that McDonald & Thompson were independent contractors. The court of civil appeals took the opposite view.

We think the circuit judge was correct. We are unable to distinguish the present case from the case of *Railroad* v. *Cheatham*, 118 Tenn., 160, 100 S. W., 902. The contract in this case and the one construed in *Railroad* v. *Cheatham* appear to be essentially the same. We have discussed this contract orally, and it is unnecessary to consider it in this opinion. Our comment would be but a repetition of what the court has previously said in *Railroad* v. *Cheatham,* supra.

It is nevertheless contended, on behalf of the plaintiffs below, that the railroad company owed a nondelegable duty to the public to see that its premises were kept free from any nuisance that would endanger persons traveling near by.

It is insisted that, inasmuch as this forge was located on the property of the railroad company, the company was liable, whether McDonald & Thompson were independent contractors or not.

We cannot agree to this contention on the facts of this case.

The bare fact that a person owns real property does not impose upon him responsibility for a nuisance erected thereon. 29 Cyc. 1203. The owner cannot be liable in respect to such a nuisance unless he has some knowledge of it, either actual or constructive. Generally, in fact, it must have been created by his authority.

The proof in this case shows that the forge was placed at this point near the street at 6 o'clock in the morning, and the accident occurred about four hours later. Neither the supervising engineer of the railroad, nor any other person connected with the company, seems to have had any knowledge of this location of the forge. The accident occurred within too short a time after the forge was placed there to justify an implication of constructive notice.

In those cases which hold the owner of property liable for damage caused by a nuisance created thereon by an independent contractor, it appears that the owner authorized the location of the nuisance at the particular place, had knowledge of its location, or the nuisance was a necessary incident of the work to be performed. *Skelton* v. *Fenton Electric Light, etc., Co.*, 100 Mich., 87, 58 N. W., 609; *Moore* v. *Townsend*, 76

Minn., 64, 78 N. W., 880; *Gulf, etc., R. Co.* v. *Chenault,* 31 Tex. Civ. App., 558, 72 S. W., 868.

This court has said in a recent case:

"It may be now generally stated as a correct proposition of law that an employer is not liable for an injury resulting from the performance of work given over by him to an independent contractor unless the work was unlawful in itself, or the injury was a necessary consequence of executing the work in the manner provided for in the contract, or subsequently prescribed by the employer, or was caused by the violation of some absolute nondelegable duty which the employer was bound at his peril to discharge, or was due to some specific act of negligence on the part of the employer himself." *Davis* v. *Lumber Co.,* 126 Tenn., 584, 150 S. W., 545.

This underpass might have been built in such a manner as not to have interfered with the traveling public. The portable forge might have been located, and ordinarily would have been located, at a point near the work itself, a considerable distance from the street. Its location was not directed by the railroad company, or known to it. The nuisance was not a necessary incident of the work to be performed, but resulted from the improper execution of it. In such cases the contractor is alone liable for damages resulting from the nuisance, unless knowledge of the existence of the nuisance can be charged to the employer. Ward on Nuisance (1st Ed.), 81; *Davis* v. *Lumber Company,* supra.

So we think the circuit judge properly directed a verdict in favor of the railroad company, and the court of civil appeals erroneously reversed this action.

The other question presented is on the remittitur suggested by the trial judge and accepted by the plaintiffs below under protest.

It is said in behalf of Mrs. Grant that her injuries were serious; that there was nothing to indicate that the jury were moved by passion, prejudice, or caprice in returning a verdict for $3,500; and that the court improperly suggested the remittitur of $1,500.

While the majority of the court of civil appeals affirmed this action of the trial court, the learned judge who delivered the opinion entered into an elaborate discussion of the subject of remittiturs, and vigorously assailed the course taken by the circuit judge. It is argued in that opinion, and in briefs of counsel for Mrs. Grant here, that the circuit judge merely substituted his judgment for that of the jury, without anything to justify him in saying that the jury were actuated by passion, prejudice, or caprice, and that such a practice violates the fundamental principles underlying the right of trial by jury and is without justification in law. It is urged that the trial court is without power to suggest a remittitur, in a case of tort involving unliquidated damages, unless it appears to him that the jury were moved by passion, prejudice, or caprice in fixing their verdict.

We cannot agree that the trial judge is without power to suggest a remittitur, unless there is an ap-

pearance of passion, prejudice, or caprice in the verdict of the jury. The power to suggest remittiturs was long ago established in Tennessee, in cases of tort involving unliquidated damages, as well as in other cases. There is no intimation in our earlier decisions that this power can be exercised only when passion, prejudice, or caprice appears in the verdict of the jury, nor is the right to suggest a remittitur restricted to such cases in other jurisdictions. *Branch* v. *Bass,* 5 Sneed, 366; *Railroad* v. *Jones,* 9 Heisk., 27; *Young* v. *Cowden,* 98 Tenn. 577, 40 S. W., 1088; *Massadillo* v. *Railway Co.,* 89 Tenn., 661, 15 S. W., 445; *Northern Pacific R. R. Co.* v. *Herbert,* 116 U. S., 642, 6 Sup. Ct., 590, 29 L. Ed., 755; *Ark. Cattle Co.* v. *Mann,* 130 U. S., 73, 9 Sup. Ct., 458, 32 L. Ed., 855; *Koenigsberger* v. *Richman Silver Mine Co.,* 158 U. S., 53, 15 Sup. Ct., 751, 39 L. Ed., 893; *Hayden* v. *Sewing Machine Co.,* 54 N. Y., 221; *Doyle* v. *Dixon,* 97 Mass., 218, 93 Am. Dec., 80; *Blunt* v. *Little* (Judge Story), 3 Mason, 102, Fed. Cas., No. 1,578; *Burdict* v. *Mo. Pacific R. Co.,* 123 Mo., 221, 27 S. W., 453, 26 L. R. A., 384, 45 Am. St. Rep., 528. See annotations; also see cases collected in notes to *Railroad* v. *Roberts,* 113 Tenn., 488, 82 S. W., 314, 67 L. R. A., 495, 3 Ann. Cas., 937; *Tunnell Hill, etc., Co.* v. *Cooper,* 50 Colo., 390, 115 Pac. 901, Ann. Cas., 1912C, 504; and note to last case in 39 L. R. A. (N. S.), 1064; Sutherland on Damages, vol. 2, sec. 460.

*Telegraph Co.* v. *Frith,* 105 Tenn., 167, 58 S. W., 118, was the first case in which this court distinctly held that a verdict so excessive as to show passion, preju-

dice, caprice, or corruption might be cured by a re-mittitur. Prior to that time such verdicts were set aside. *Moore* v. *Burchfield,* 1 Heisk., 203; *Nashville & Chattanooga R. Co.* v. *Smith,* 6 Heisk., 174; *Railroad* v. *Roddy,* 85 Tenn., 400, 5 S. W., 286; *Railroad* v. *Stacker,* 86 Tenn., 343, 6 S. W., 737, 6 Am. St. Rep., 840; *Railroad* v. *Griffin,* 92 Tenn., 694, 22 S. W., 737.

The rule still prevailing in most jurisdictions is that verdicts so excessive as to indicate they were the result of prejudice, passion, or caprice should be set aside. It is said that in such cases the passion or prejudice permeates the whole verdict, that none of it should be allowed to stand, that parties are entitled to a trial by a fair jury, and that verdicts appearing to have resulted from improper motives should be rejected in toto. See notes to *Railroad* v. *Roberts,* 113 Tenn., 488, 82 S. W., 314, 67 L. R. A., 495, as reported in 3 Ann. Cas., 937, and to *Tunnell Hill, etc., Co.* v. *Cooper,* 50 Colo., 390, 115 Pac., 901, as reported in Ann. Cas., 1912C, 504, and 39 L. R. A. (N. S.), 1064; also see *Ark. Cattle Co.* v. *Mann,* 130 U. S., 73, 9 Sup. Ct., 458, 32 L. Ed., 855.

*Telegraph Co.* v. *Frith,* supra, is referred to by Mr. Sutherland, in his work on Damages (volume 2, sec. 460), as being an exceptional case, and it is said to carry the doctrine of curing verdicts improperly influenced to a further extent than other courts have gone.

The practice now, however, is firmly established in Tennessee, and although a verdict is so excessive as

to indicate that it was influenced by passion, prejudice, or caprice, it may be cured, and will stand, if a remittitur is accepted by the plaintiffs, and the verdict reduced to a reasonable amount.

The case of *Railroad* v. *Roberts,* 113 Tenn., 488, 82 S. W., 314, 67 L. R. A., 495, 3 Ann. Cas., 937, merely announces the adoption of the practice of suggesting remittiturs in the appellate courts and holds that the appellate courts may cure an excessive verdict in the same manner as the trial courts do. The law, therefore, has long been settled in Tennessee that a remittitur might be suggested by the court in cases where the verdict was merely excessive. That a verdict due to passion and prejudice may also be saved by remittitur is the later doctrine. *Railroad* v. *Roddy,* 85 Tenn., 400, 5 S. W., 286, does not consider the question of remittitur at all, but deals with the duty of the court as to setting aside verdicts in toto.

In the present case, the trial judge found that the verdict was so excessive as to indicate passion, prejudice, or caprice, so that, even according to the view of the law taken by Mrs. Grant's counsel, the court was authorized to suggest a remittitur. It is said, however, that there was nothing to indicate passion, prejudice, or caprice on the part of the jury, that it was a body of fair-minded men, subjected to no improper influence, etc.

The deliberations of a jury are in secret, and no one can ordinarily know what considerations move them. The only evidence the court usually has of passion,

prejudice, or caprice is the amount of the verdict. He is authorized to infer the existence of such improper influence from an excessive verdict alone. In this case, the trial judge, who saw the plaintiff and heard her injuries described, said that the verdict was so large as to indicate passion, prejudice, and caprice.

Under chapter 29 of the Acts of 1911, when a remittitur is suggested because the trial judge is of opinion a verdict is so excessive as to indicate passion, prejudice, corruption, partiality, or unaccountable caprice, the plaintiff below may accept the remittitur under protest, and appeal to the court of civil appeals. Mrs. Grant took this course, and the court of civil appeals sustained the trial judge.

This is not a proper case in which to undertake a general discussion of the scope and meaning of the Act of 1911. This remittitur was suggested because of passion and prejudice appearing to the circuit judge, and under the very terms of the statute plaintiff below was entitled to accept under protest and appeal. The court of civil appeals affirmed the lower court, and this action was likewise justified by the very terms of the statute.

It has been our practice in cases like this, when the trial court and the court of civil appeals have agreed on damages, to acquiesce in the amount so found. The concurrent finding of both lower courts on such a question should be well-nigh conclusive here. We see no reason to depart from our custom on this occasion, and

the damages to which the two courts have agreed will be accepted.

Any further effort at interpretation of this statute in the case at bar would be beside the questions presented for our determination herein.

The circuit judge was correct in directing a verdict for the railroad company, and, in so far as the decree of the court of civil appeals reversed him, the decree of that court will be reversed; otherwise, the decree of the court of civil appeals will be affirmed.