C. C. BREEDEN, Plaintiff in Error, v. DOROTHY ANN HURLEY, by Next Friend, J. H. HURLEY, Defendant in Error.

Western Section.   May 8, 1931.

Petition for Certiorari denied by Supreme Court, December 19, 1931.

600

Metcalf, Metcalf & Apperson, of Memphis, for plaintiff in error. Stickley & Fitzhugh and John E. Leake, all of Memphis, for defendant in error.

HEISKELL, J. This is an action by Dorothy Ann Hurley, a minor child, who at the time of the alleged accident, was four years old, suing by her father and next friend, J. H. Hurley, against C. C. Breeden. The action is based on the alleged negligence of C. C. Breeden in the operation of his automobile on the afternoon of July 17, 1929, about 6 P. M., on Poplar Boulevard, Memphis, Tennessee, between Bingham Street on the west and Collins Street on the east when Dorothy Ann Hurley was crossing Poplar Avenue in a diagonal direction from northwest to southeast and was injured by the automobile of C. C. Breeden, which was being driven eastwardly on Poplar. The trial resulted in a verdict for plaintiff for $5000 and defendant has appealed.

There is evidence to support the following state of facts:

The accident in question occurred about six o'clock and before sundown on the afternoon of July 17, 1929, on the south side of Poplar Boulevard in the City of Memphis, midway between the intersecting streets of Bingham on the west and Collins on the east. Poplar Boulevard is a main thoroughfare running east and west. It is paved with concrete, level and forty-six feet wide from curb to curb. On the north side of Poplar Boulevard between said intersecting streets of Bingham and Collins, there is a row of houses fronting on Poplar and only a few feet from the North curb of Poplar. Plaintiff's father lived in the house on the northwest corner of Poplar Boulevard and Collins Street. One of the eye witnesses to the accident, Granville Garner, lived on the north side of Poplar Boule-

vard about the center of the block between Bingham Street on the west and Collins Street on the east. The block between these two intersecting streets is approximately six hundred feet long. There is only one house on the south side of Poplar Boulevard between said intersection streets. This house is situated near the southeast corner of Poplar and Bingham and is occupied by Mr. Willis. There was no obstruction on Poplar Boulevard, and a person driving on this street could see from curb to curb a distance of at least one quarter of a mile.

Plaintiff, Dorothy Ann Hurley, just before the accident in question, together with other little children, was playing in the driveway at the home of the witness, Granville Garner. Plaintiff left the other little children, with whom she was playing and started across Poplar Boulevard from the north side to the south side, walking a few steps and maybe trotting a few steps, and going diagonally across Poplar in a southeasterly direction. When she had traversed a distance on Poplar Boulevard of approximately fifty feet and when she had reached a point south of the center of said boulevard, the defendant, C. C. Breeden, driving his new Studebaker automobile east on the south side of Poplar Boulevard, without giving any warning of any kind, ran his automobile into, over or against the plaintiff.

When defendant's car hit plaintiff, he pulled it short to the south, stepped on the brakes and stopped. The steering wheel of his car was on the left side but after the accident he got out on the right side and went around the rear end of his automobile and came up to the plaintiff, who was entangled under the front wheels of the car. Defendant made no effort to stop his automobile until after the plaintiff had been struck. When the defendant applied the brakes to his car, it skidded about eight to ten feet. Defendant's car was the only automobile on Poplar Boulevard at or near the point of the accident, except the automobile in which the witnesses John Leake and G. M. Biggs were riding. Their automobile was also going east on Poplar and about one hundred yards behind the defendant's car. They were traveling thirty miles per hour and gained no distance on the defendant's car before the accident.

There was nothing to prevent the defendant from seeing the plaintiff when she left the north curb and started across the street. At the time plaintiff left the north curb of Poplar Boulevard, the defendant was about at the intersection of Poplar Boulevard and Bingham Street, or a distance of at least two hundred feet west of the point where plaintiff left the north curb of Poplar and could have seen plaintiff before and at the time she started across the street, in ample time to have stopped his automobile and prevented the accident.

Breeden testifies that he was driving 20 miles per hour; that he saw a small boy run across the street sixty or seventy feet ahead of him and stop on south side where there were no sidewalks; that he immediately slowed down to 10 miles per hour and put his car under control; that he was watching this boy to prevent an accident when plaintiff was seen out of the corner of his eye running diagonally toward his car; that immediately upon seeing her, he swerved to right and stopped in a few feet; that the plaintiff ran into his left front bumper and fell to the street opposite the left front wheel.

There is no assignment of error that there is no evidence to support the verdict. The first two assignments are that the verdict is against the weight of the evidence and so much so and so against the law as to show passion, prejudice and caprice.

In support of the second assignment the brief for defendant says:

"This Court will reverse upon conflicting evidence of facts, where there is a great preponderance of evidence against the verdict, so that the court can clearly see that the judgment of the law upon all the facts shown in the evidence, is not that which the jury has found. Nance v. Haney, 1 Heisk., 177; Morris v. Swaney, 7 Heisk., 591; Tenn. Coal Co. v. Roddy, 85 Tenn., 400; Williams v. Brasfield, 9 Yerg., 270."

In the first of these cases the Court says:

"We can safely say in this case, that there not only is a great preponderance of testimony against the verdict, but that there is absolutely no evidence in the record that supports it. It is evidently the result of passion or of prejudice and cannot be permitted to stand."

In the case of Morris v. Swaney, 7 Heisk., 602, the Court cites the 1 Heisk., case in the language of the brief just quoted, but finds that there is evidence to sustain the verdict and therefore the Nance case does not apply.

In Tenn. Coal Co. v. Roddy, 85 Tenn., 400, the Court merely recognized the rule that a verdict attacked as excessive should not be disturbed unless so excessive as to indicate passion, prejudice or caprice.

In Williams v. Brasfield, 9 Yerg., 272, the Court says: "In this case there is not only a great preponderance of testimony on one side, but it is all on one side and that against the verdict."

It is sufficient to say as to this assignment, that the authorities cited have no application because the verdict is not against the preponderance of the testimony. The eighth assignment is that the verdict is excessive, so we take it the second assignment means that any verdict would be so against the weight of the evidence as to indicate passion, prejudice or caprice. The authorities cited are not in conflict with the rule now so well settled, that the verdict on the

facts will not be disturbed where there is material evidence to support it.

Defendant's theory is that he saw a little boy cross the street in front of him from north to south and he was watching him to see whether or not he was going back, and that this excused him for not watching for any one else on the street and for not seeing the little girl. This theory is not tenable. The answer to it is "this you ought to have done and not to have left the other undone." He was bound to look out for children on the whole street. The little girl had gone about fifty feet diagonally across the street in plain view. She did not appear suddenly from behind any obstruction. If she appeared suddenly to the defendant, it was because he was not looking. He was not watching the street. He cannot excuse himself for not watching the street by saying he was busy watching the little boy who had already crossed the street to see if he was going back. Defendant could have taken in the whole street at a glance. He was bound to see the little four year old girl. It was negligence not to see her. Besides, there was evidence to warrant the jury in finding that the defendant was driving faster than he claimed and that he did not slow down. Witnesses driving behind, say they were going thirty miles an hour and did gain on him.

The third assignment is to the effect that the trial court erred in refusing to grant a new trial because of the misconduct of the foreman of the jury.

The defendant, on a motion for a new trial, alleged that the juror, J. W. Dillard, was guilty of misconduct, in that he discussed the case prior to the rendition of the verdict, with an Italian boy by the name of Frank Vescovo and expressed his opinion of what verdict he intended to render. In support of this motion, defendant filed the affidavit of the said Frank Vescovo, in which he (Vescovo) stated that he was a clerk in one of Clarence Saunders' stores on Lauderdale Street in Memphis, Tennessee, and that Mr. Dillard would often come in the store; that on Saturday, November 22, 1930, Mr. Dillard told him that he was sitting on the jury in the Circuit Court where a little girl was suing for damages in an automobile accident; that he believed the little girl ought to have damages; that some of the jurors did not seem to think she ought to have damages, but that he was going to see that she got damages.

In addition to the affidavit, the defendant introduced Frank Vescovo as a witness on the motion for a new trial, and he to some extent at least, weakened the force of the affidavit.

On cross-examination it developed that this boy was a client of Mr. Apperson's, one of the attorneys representing the defendant in this case, and that he had a suit pending in Court.

He admitted that he told Mr. John Leake, after the motion for a new trial was filed, that when he signed the affidavit he did not intend to say that the conversation which he had with Mr. Dillard was on November 22 nor did he intend to say that some of the jurors did not think that plaintiff in the case was entitled to damages, and that Mr. Dillard was going to see that she got damages.

In rebuttal to this testimony, the affidavits of the jurors J. W. Dillard and John E. Leake were filed and read to the court. These affidavits appear on pages 269 to 274 of the record.

The juror, Mr. Dillard, denied that he had any conversation with the witness Frank Vescovo on November 22, with reference to the lawsuit, further than to say that he was sitting on the jury in a case where a little girl was suing for damages. He stated that this was all the conversation he had with the witness prior to the verdict of the jury; that on Monday afternoon, November 24, 1930, or Tuesday morning, November 25, 1930, after the verdict had been rendered, he was in the store and the witness asked him if the jury had rendered a verdict, and he told the witness that the jury had rendered a verdict for five thousand dollars damages, and that he thought the verdict was just; that he did not tell the witness Vescovo, on November 22nd or at any other time ''that some of the jurors did not seem to think that the plaintiff in the case was entitled to damages, and that he was going to see that she got them;'' that the case was tried solely on the evidence introduced in the case and the charge of the Court. He denied any misconduct whatsoever upon his part.

Mr. John E. Leake, in his affidavit stated in substance that he talked to Vescovo after his affidavit was given and filed in this cause, and that the witness Vescovo stated that the conversation he had with Mr. Dillard occurred on Monday, November 24, 1930; that he (Vescovo) had no intention of making such statement as was contained in said affidavit, and that it was not his intention to have the idea conveyed in his affidavit that Mr. Dillard said that he was going to see that the little girl got a verdict.

Mr. Dillard says that the jury was unanimous except that one wanted to give $4,000. If this was true it would go to show that he did not use the languague of the affidavit as to the other jurors. If not, the other jurors could have been examined. We do not think it was error to refuse a new trial on this ground and the assignment is overruled.

The fourth assignment predicates error upon that part of the charge in which the trial court sets out the theory of the defendant on the ground that it does not state fully the defendant's theory of the case. We think the charge states everything which defendant was entitled to have stated to the jury in this connection and was

stronger for the defendant than he was entitled to. The fifth, sixth, and seventh assignments are based upon requests for instructions refused by the Court. These requests all involve the theory that the defendant in watching the little boy who had crossed the street and was in no danger, to see that he did not get into danger, absolved the defendant from looking out for danger to any one else on the street, no matter in what immediate danger they might be. They are besides, all based upon the jury finding that the plaintiff appeared so suddenly on the left of the car that defendant was prevented from seeing her by watching the boy. These requests so far as they contained anything to which defendant was entitled, had been covered by the general charge and in so far as they went beyond the general charge, they embraced matter which would have been improper in the charge. Watching the boy who was in no danger should not have prevented defendant from watching the whole street and there was no evidence to warrant the finding that plaintiff appeared suddenly. She had been in plain view while she walked or trotted about fifty feet. It is hard to imagine a stronger antithesis to sudden appearance than this. The defendant had no right to ask a charge based upon a finding by the jury which there was no evidence to justify. All these assignments are overruled.

The eighth assignment is that the verdict is so excessive as to indicate prejudice, passion, caprice or corruption on the part of the jury. Nothing has been more strongly emphasized in the opinions of our Supreme Court than that the law lays down no fixed rule for the computation of damages in personal injury cases; that it is the province of the jury to pass on the extent of the injuries and the proper compensation to be allowed, and that if the verdict is not a proper one, no one is so well qualified to correct it as the trial judge who has been through the trial with the jury, heard all the testimony, seen the witnesses and parties and lived through the atmosphere of the case with the jury. In this case there is some conflict between the doctors as to the nature and extent of plaintiff's injuries. As to the initial injury, there is no dispute, but there is some conflict as to the seriousness of the resulting deformity. She received a compound fracture of the large bone of the right leg two and one-half inches above the ankle, as well as a fracture of the small bone. This large bone protruded several inches out of the flesh on the inside of the right leg just above the ankle.

In addition her two front or central teeth were driven back into her gums out of sight and one of the lateral teeth was knocked out. Her gums were lacerated and torn. She suffered considerable pain, and still suffers, and at times has nervous spells.

The record further shows that the two bones of her right leg where this injury occurred have now grown together; that there is a slight

angulation in the large bone; that the tendons or leaders on the inside of her foot were torn loose by reason of this compound fracture; that on account of the tendons being torn loose on the inside of her foot the tendons on the outside have become stronger and this, together with the angulation of the large bone and the fact that two bones have grown together, not only causes a lessening of the mobility in the ankle but causes her foot to be turned to the inside, causing her to walk with difficulty.

The proof further shows that by reason of this accident, the plaintiff does not have the normal weight bearing on this foot and ankle and that this fact produces pain.

The doctors who examined her further testified that not only do these injuries produce pain, but that the deformity will gradually grow worse.

The child was kept in a plaster cast for at least four weeks. She was taken home and remained in bed for six or eight weeks, during all of which time she suffered great pain and continues to suffer.

Counsel for defendant criticise the conduct of plaintiff's case in that Dr. Speed who attended the plaintiff after her injury and set the bones of her broken leg, was not produced as a witness, but the testimony of other doctors was relied on. This is explained, however, by showing that Dr. Speed refused to testify for plaintiff unless his bill of $282 and also $50 for testifying was paid in advance. The defendant made these payments to Dr. Speed and then called him as a witness. While as compared with the doctors called as witnesses for the plaintiff, he is disposed to minimize the seriousness of the injury, he does not deny that it has resulted in some deformity which may be permanent. He says the plaintiff has flat feet, both feet, but the right foot, that of the injured leg, is worse than the other. Also the feet turn in, but the right one more than the left. The injury increased this defect on the right side, but he does not consider it a marked deformity. When asked if he thought this deformity would heal, he answered:

"I am not prepared to say. Children have a great deal of recuperative power. I don't think any one can say that a deformity or injury of any type will ever get well. I think that is beyond the ability of human beings, but I think this child has a chance in all probability of overcoming any deformity that may be there. Children more or less adapt themselves to such things in growth."

The doctors who testified for plaintiff represented the deformity produced by the injury as more serious and said that it would gradually grow worse. With the testimony as it was, we cannot say the amount of the verdict indicates any improper motive on the part of the jury.

It follows that all assignments of error must be overruled and the judgment of the lower court affirmed. Costs of appeal will be paid by defendant.

Owen and Senter, JJ., concur.