BOARD OF MAYOR AND ALDERMEN OF COVING-
TON et al. v. MOORE et al.—232 S. W. (2d) 410.

Western Division. At Jackson. May 24, 1950.

Petition for Certiorari denied by Supreme Court, August 31, 1950.

562

L. E. Gwinn, of Memphis, and John Cunningham, of Covington, for plaintiffs in error.

Tipton & Tipton, and Bringle & Bringle, both of Covington, for defendants in error.

SWEPSTON, J. This is an appeal in error by the City of Covington and the State of Tennessee from a judgment against them in condemnation proceedings before a jury fixing the damages for property taken in widening Highway 51 where it traverses the City.

A jury of view fixed the value of the land taken at $2000.00 and incidental damages to the remainder of the tract a $10,500.00 with no incidental benefits, or a total of $12,500.00.

The condemnors appealed to the Circuit Court, a trial was had to a jury, who found the value of the land taken to be $2000.00, the damages to the remainder $16,000.00 and no incidental benefits, or a total of $18,000.00.

Condemnors' motion for a new trial seasonably made was overruled and they have appealed and assigned error.

The property affected was being used for a filling station; it was acquired by owners in three separate purchases, all of which formed at the northeast intersection of Highway 51 and West Liberty Street a truncated right angle triangle with its base along the north line of West Liberty about 60 feet, its altitude along Highway 51 about 60 feet, its hypotenuse about 74 feet running north from West Liberty Street to a point about 24 feet east of Highway 51. It was a corner lot except that a small triangle at the intersection corner of these streets had been previously acquired by the City, which

ran 6 feet east along the base line and 10 feet north along the altitude, or an area of 30 square feet.

The highway and this property lie here somewhat east of north. The highway was being widened from a 60 foot to an 80 foot right of way and 10 feet were accordingly taken on each side of the existing highway from these and other contiguous owners. The amount taken from defendants in error was about 570 square feet.

A small story and a half building about 14 x 20 of brick and stucco with slate roof lay 3 feet east of the west line of the Highway 51 and 14 feet north of the north line of Liberty Street. As part of the foundation a concrete platform 6 inches high extended out 3 feet on each side of the building and on it was located the pumps, two on the Liberty Street side and two on the highway side, so that on the highway side customers' automobiles were served on the right of way; on the strip of 12 feet lying between the highway pavement and the east line of the right of way; this was a permissive use and the strip was paved by the station owner.

The acquisition by condemnors of the 10 foot strip necessitated demolition of the building and removal of the pumps; and there was left to owners a property of similar shape but of smaller size, about 50 x 50 x 74 x 13.

There are four assignments of error as follows:

"I.

"The court erred in overruling the first ground of appellants' motion for a new trial, reading as follows: 'There is no evidence to support the verdict.'

"This was error in that the evidence in behalf of appellants was based on facts as distinguished from

conclusions, while the opposing evidence rested upon false premises and constituted mere guesses as to value.

## "II.

"The court erred in overruling the fourth ground of appellants' motion for a new trial, to-wit: 'There is no evidence to support the verdict of the jury on the issue of incidental benefits to the property involved.'

"This was error in that there was evidence that the proposed improvement doubled the value of property adjacent to the highway in the Town of Covington and no evidence possessing probative quality to the contrary.

## "III.

"The Court erred in overruling the sixth ground of appellants' motion for a new trial, reading as follows: 'The damages awarded by the verdict were so excessive as to show whim, caprice and prejudice on the part of the jury.'

"This was error in that:

"(a)   Witnesses fixing damages as high as the jury verdict their estimates on injury to the business and the jury obviously disregarded the instruction of the court that that was not an element of damage that could be considered, and accepted such testimony of the witnesses.

"(b)   The jury not only entirely disregarded the testimony of appellants' witnesses, based on experience in real estate appraisals and actual sales of similar property, but fixed the amount of damages at a sum approximately $3,000.00 in excess of the average value fixed by the seven witnesses who testified for appellees.

"(c)   The jury disregarded the undisputed testimony that appellees' lot, prior to the taking of a part of it,

was entirely too small for the operation of a service station and that the conduct of their business required the use of public property.

## "IV.

"The court erred in overruling the eighth ground of appellants' motion for a new trial, this ground being as follows: 'The jury in reaching its verdict failed to take into consideration the long practice of the defendants in using a part of East Liberty Avenue and a part of the Highway to service automobiles because of the smallness of their driveway.'

"This was error because the jury based its verdict upon the highest estimate of values given by any of appellees' witnesses, which test treated appellees' use of public property as an element of value."

The first three assignments bring to a focus a fundamental distinction between the two aspects of a verdict—liability and amount —which we discuss later.

Of course, if there be no evidence to support either the one aspect, or the other, or both, the verdict cannot stand. An assignment to that effect in the motion for a new trial and in the appellate court is a proper one and requires a review of the evidence to determine the question. In the instant case there is no dispute as to liability; the only question on this assignment is whether there was any substantial evidence to support the amount of the verdict.

To this end we do not weigh the evidence, but, quite to the contrary, we consider only the evidence favorable to the successful party below with all reasonable inferences therefrom and take as true the strongest legitimate view of it in favor of the successful party,

discarding all unfavorable evidence and inferences. Citation of authority is hardly necessary.

The gravamen of condemnors' argument is that the testimony of the witnesses for the owner was mere guesswork and based upon the two false premises that the owner was entitled to compensation for the loss of his business, although the court charged otherwise, and for the loss of the privilege of having customers serviced on the Highway property.

One of the owners and seven other witnesses testified to values before and after taking ranging from $15,000.00 to $20,000.00 before, and $500.00 to $2,000.00 afterwards. Five of them said $20,000.00 before, two said $500.00 after, while three said $2,000.00 after. The jury accepted the top figure for before and after, making a net of $18,000.00. All testified there was no incidental benefit. One of the witnesses, T. J. Wilson, an employee of Lion Oil Company, who are wholesalers doing no business with owners, was thoroughly familiar with property values along the Highway and placed the value at $20,-000.00 before and $1,000.00 to $1,200.00 afterwards; he said the remaining property is not adequate for a standard size station; that the property before hand had a rental value of $150.00 per month.

Witnesses Bringle and Noel did say that they took into account the volume of business done at the station in fixing the value of the property; none of the others so testified, but valued the property as to its worth to anybody for whatever use they might desire.

As to the use of a part of the Highway property for servicing from two pumps, it was shown that if the privilege had been withdrawn, the two pumps could have been moved to the north side of the building.

We refrain from referring to much of the other argument in condemnors' brief, because it is a discussion of the credibility of the witnesses and a preponderance of the evidence.

We hold that there was ample evidence to support the verdict in its entirety, and the first two assignments are overruled.

As to the question of excessiveness of the verdict, we repeat what we said in the case of Ruch v. City of Memphis, (Tenn. App., 5/30/50, unreported), where the complaint was inadequacy of the verdict.

The question arises as to what extent, or how, we should review the action of the trial judge in refusing or in granting one side or the other a new trial under relevant Code Sections 8985, 8986.

█ A verdict has two separate aspects—liability and amount of the verdict—and there is a broad distinction between the two. Telegraph Co. v. Frith, 105 Tenn. 167, 174, 58 S. W. 118 (dealing with remittiturs).

█ Under the above Code sections, which are the Act of 1875, Chapter 106, appellate courts are authorized and required to review the action of the trial court. Where, as heretofore said, the complaint relates to the question of liability or no liability, the appellate court does not weigh evidence. Where the complaint relates to the amount of the verdict—either for excessiveness or inadequacy, the appellate court will weigh the evidence, not merely to determine the bare preponderance, but to determine whether the evidence so greatly preponderates against the amount found as to show passion, prejudice or unaccountable caprice. The court will not reverse unless it appears that the amount of the verdict was affected by, or resulted from, such preju-

dice, etc. It is not enough merely that the trial judge or the appellate court opines that the amount was too large or too small. Burckell v. Memphis Street Ry., 2 Tenn. Civ. App. 576, 584 and cases cited, especially Tennessee Coal & R. Co. v. Roddy, 85 Tenn. 400, 404 et seq., 5 S. W. 286.

If the amount is so greatly at variance with the decided weight of the evidence, prejudice, etc., may be inferred from that fact alone. Grant v. Louisville & N. Railroad Co., 129 Tenn. 398. 410, 165 S. W. 963.

This has long been the rule both as to inadequacy and excessiveness where the question involved was whether or not to set aside *the verdict in toto*. It is in no way affected by the Act of 1911, Code Sections 8987, 8988, or the amendment by Act of 1849, chapter 253, which relates to curing an excessive verdict by suggestion of remittitur and providing for appeal after acceptance under protest.

The distinction is made in Grant v. Railroad, supra, 129 Tenn. at page 409, 165 S. W. 963. See also, Telegraph Co. v. Firth, supra.

What is said in Dickson v. Davidson County, 28 Tenn. App. 210, 213, 188 S. W. (2d) 114, and in Morgan County v. Jones, 12 Tenn. App. 197, is probably susceptible of being misunderstood. In the former case it was said; "the rule of law upon this subject is that in a condemnation case where there was much conflicting testimony but was evidence to support the amount found by the jury, the verdict should not be disturbed." The same thing in substance is said in the latter case and is quoted in the former.

We understand those statements to mean that the court reviewed the evidence, found no wide variance

between the actual amount of the verdict and the amount that the evidence for one side fairly justified.

We have read the testimony and find nothing to indicate prejudice. As stated above, the evidence took a wide range from $18,000.00 to $65,000.00. We think it was exclusively within the province of the jury on such evidence to say what the amount should be, basing their views on the reliability of the witness for accuracy, skill, competency, interest, etc. Tennessee Coal & R. Co. v. Roddy, supra.

In Gibson County Electric Membership Corp. v. Hall, Tenn. App., 222 S. W. (2d) 689, 696, where in a personal injury case the assignment was excessiveness of the amount, this court said: "As a general rule we do not think we ought to disturb the amount of a verdict returned by a jury of fair-minded men and approved by a fair-minded judge unless it appear to a moral certainty to be so far beyond reason that to let it stand would be a palpable injustice."

In the instant case the evidence for condemnors ranged from $10,000.00 to $12,000.00 before the taking and $2,300.00 to $12,000.00 afterwards; the range of owner's evidence has already been stated.

The verdict was well within the evidence adduced by owners and we see nothing to indicate that the case was not fairly tried on a correct charge of the Court, so there is nothing to indicate that it was an unjust or capricious verdict. Therefore we see no rational basis for either the granting of a new trial, or for suggesting a remittitur.

What has already been said answers the fourth assignment and the same is overruled.

Judgment will be entered here for $18,000.00 with interest from September 11, 1948, the date of appropriation of the property and costs.

Anderson, P. J., and Baptist, J., concur.